LINDA JONES, Plaintiff v. THE CITY OF DURHAM and JOSEPH M. KELLY [in his official capacity as a police officer for the City of Durham], Defendants

No. COA04-662

(Filed 15 February 2005)

**1. Police Officers— standard of care—operation of motor vehicle—answering distress call**

An officer's conduct when responding to another officer's distress call is governed by N.C.G.S. § 20-145 and the standard of care is gross negligence. This standard applies to the overall operation of the vehicle, not just to the officer's speed.

**2. Police Officers— operation of motor vehicle—answering distress call—not grossly negligent**

Plaintiff did not demonstrate the existence of a genuine issue of material fact as to gross negligence by Officer Kelly in the operation of his car while responding to a distress call by another officer. The courts look to a number of factors in determining whether an officer was grossly negligent pursuant to N.C. Gen. Stat. § 20-145, with the three primary factors being the reason the officer was in pursuit; the probability of harm to the public; and evidence of the law enforcement officer's conduct during the pursuit.

Judge Levinson dissenting in part and concurring in part.

Appeal by both plaintiff and defendants from judgment entered 6 January 2004 by Judge A. Leon Stanback, Jr., in Durham County Superior Court. Heard in the Court of Appeals 8 December 2004.

*Glenn, Mills & Fisher, P.A., by Robert B. Glenn, Jr., Stewart W. Fisher and Carlos E. Mahoney, for plaintiff appellant-appellee.*

*Faison & Gillespie, by Reginald B. Gillespie Jr., and Keith D. Burns, for defendant appellants-appellees.*

*Of Counsel Elliot Pishko Morgan, P.A., by Robert M. Elliot, Amicus Curie of American Civil Liberties Union of North Carolina Legal Foundation, Inc., and North Carolina Academy of Trial Lawyers in support of plaintiff appellant-appellee.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Mark A. Davis, Amicus Curiae for N.C. Association of County Commissioners in support of defendant appellants-appellees.*

JONES v. CITY OF DURHAM

[168 N.C. App. 433 (2005)]

McCULLOUGH, Judge.

The claims and defenses raised in this case resulted in the partial summary judgment order now on appeal. Effective review of the order will best be achieved by first providing the underlying evidence before the court at the time of its entry.

On 15 September 2000, at approximately 9:00 a.m., Officer Tracy Fox ("Officer Fox") was dispatched to investigate a domestic disturbance at 800 North Street in Durham. Soon after arriving at the scene, Officer Fox determined that she would need assistance and called for backup. Dispatch, upon receiving her call, issued a "signal 20" requiring all other officers give way for Officer Fox's complete access to the police radio by holding all calls. Officer Joseph M. Kelly ("Officer Kelly" or "defendants" when referred to collectively with the City of Durham) was approximately 2-½ miles from North Street, as were fellow Officers H.M. Crenshaw ("Officer Crenshaw") and R.D. Gaither ("Officer Gaither"). These officers were in their own police vehicles, but together the three were investigating a scene of suspicious activity.

In response to the first call by Officer Fox, Officers Kelly, Crenshaw, and Gaither got in their separate vehicles and began driving towards North Street on Alston Avenue and turning west onto Liberty Street. Officer Fox then made a second distress call, stating with a voice noticeably shaken, that she needed more units. Officers Kelly and Crenshaw activated their blue lights and sirens and increased the speed of their vehicles towards North Street. Officer Gaither took a different route.

At approximately 9:09 a.m. on the same morning, Linda Jones ("plaintiff") was leaving her sister's apartment complex at the southwest corner of the intersection of Liberty Street and Elizabeth Street ("the intersection"). The posted speed limit for motorists traveling upon Liberty Street was 35 miles per hour. At the curb of Liberty Street, plaintiff observed no vehicles approaching, but heard sirens coming from an undeterminable direction. A bystander outside the apartment complex also heard the sirens, but could not determine their direction. Plaintiff, some 95 feet west of the intersection, began to cross Liberty Street outside of any designated cross walk and against the controlling traffic signal. At this point in the road, Liberty Street had three undivided lanes: two eastbound lanes (the second or middle eastbound lane was for making northbound right turns only) and a westbound lane. Reaching the double yellow lines divid-

ing the two eastbound lanes which she crossed, plaintiff first saw a police vehicle heading towards her in the westbound. The vehicle came over the railroad tracks on the eastern side of the intersection. Sergeant Willie Long, an eyewitness who was in his vehicle at the corner of Grace Drive and Liberty Street, and plaintiff both observed Officer Kelly's vehicle go completely airborne over the railroad tracks. Once his vehicle crossed the railroad tracks, defendant saw plaintiff at a distance of between 300-332 feet and standing at the double-yellow lines.

Plaintiff turned and began running back in the direction from which she came, across the two eastbound lanes. Officer Kelly, crossing the intersection and accelerating, turned his vehicle with one hand into the eastbound lanes and struck plaintiff on her side as she was retreating to the curb. She was launched six feet into the air over the vehicle and landed in a gutter approximately 76 feet down along the eastbound lane of Liberty Street. Officer Kelly's vehicle traveled approximately 160 feet after striking plaintiff and came to a complete stop in the eastbound lane of Liberty Street. Plaintiff suffered severe injuries.

While Officer Kelly was en route to Officer Fox's two distress calls, he was aware at least four other officers were responding. Officer Crenshaw's vehicle, behind Officer Kelly's, videotaped Officer Kelly's vehicle on Liberty Street going through the intersection and colliding with plaintiff. Using the videotape and the field measurements taken at the scene of the accident, an accident reconstruction expert determined Officer Kelly's speed to have varied between 55 and 74 miles per hour.

In her initial complaint, plaintiff brought claims against Officer Kelly and the City of Durham ("defendants") for negligence, gross negligence, and obstruction of public justice and spoilation of evidence ("spoilation claim"). Defendants' answer included a motion to dismiss based on N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2003) and pled the affirmative defenses of immunity and contributory negligence. Plaintiff responded alleging the doctrine of last clear chance to defendants' defense of contributory negligence. Plaintiff then filed an amended complaint, bringing additional claims alleging that defendants' assertion of immunity in this case violated a number of plaintiff's rights proscribed under the N.C. Constitution. This matter, with pleadings, exhibits, affidavits, and depositions of forecast evidence, was presented before the trial court in a summary judgment

hearing held on 11 December 2003 pursuant to motions brought by both parties.

In an order entered 6 January 2004, the trial court concluded the following: (1) that plaintiff's ordinary negligence claim was dismissed as a matter of law; (2) that there were issues of fact as to whether Officer Kelly was grossly negligent in his emergency response to assist and apprehend the suspect threatening Officer Fox; (3) that there were issues of fact concerning plaintiff's spoilation claim; (4) that plaintiff's claim for violation of the prohibition of exclusive emoluments based on Section 1, Article 32 of the N.C. Constitution, was dismissed[1] as a matter of law; and lastly, (5) defendants' assertion of sovereign immunity violates the guarantees of due process and equal protection under Section 1, Article 19 of the N.C. Constitution as a matter of law. The trial court certified its order under N.C. Gen. Stat. § 1A-1, Rule 54(b) (2003) as an entry of final judgment. Both parties appealed.

In their appeal, defendants assign error to the trial court's finding of an issue of fact supported by forecast evidence as to whether defendants were grossly negligent and argue the court should have granted summary judgment as a matter of law in their favor. Additionally, defendants allege the trial court erred when failing to rule in their favor as a matter of law on the spoilation claim and constitutional claim. Plaintiff's only issue on appeal submits that the trial court erred in dismissing her claim of ordinary negligence, finding the standard to be inapplicable as a matter of law in light of the forecast evidence.

At the outset we note this appeal, not being a final judgment as to all claims and all parties and therefore otherwise interlocutory, was certified as a final judgment by the trial court pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b) and with a finding of no just reason for delay. Additionally, previous panels of this Court have found a substantial right in a local government's assertion of sovereign immunity and its implications to a government body. N.C. Gen. Stat. § 1-277 (2003) (allowing appeals from superior court which affect a substantial right[]); see, e.g., Hedrick v. Rains, 121 N.C. App. 466, 468, 466 S.E.2d 281, 283 ("orders denying dispositive motions grounded on the defense of governmental immunity are immediately reviewable as affecting a substantial right"), aff'd per curiam, 344 N.C. 729, 477 S.E.2d 171 (1996). Therefore, this appeal is properly before us for review.

---

1. Plaintiff has not appealed this dismissal.

## I. Standard of Review

When reviewing an order of summary judgment, we discern "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003); *Parish v. Hill*, 350 N.C. 231, 236, 513 S.E.2d 547, 550, *reh'g denied*, 350 N.C. 600, 537 S.E.2d 215 (1999) (finding as a matter of law the proper standard of care of police officer in pursuit is that of "gross negligence," and that the forecast evidence was insufficient to survive summary judgment under that standard). In doing so, we view the evidence and allegations forecast in a light most favorable to the non-moving party. *Id.*

Pursuant to plaintiff's appeal, in light of the circumstances of the case at bar, we must determine as a matter of law what the proper standard of care to which defendants' conduct will be held. Next, pursuant to defendants' appeal, we must apply that proper standard to determine if there is an issue of fact forecast by the evidence before the trial court of whether defendants breached the proper standard.

In this opinion we hold the proper standard of care to which Officer Kelly was to adhere is that of "gross negligence," and therefore affirm the portion of the trial court's summary judgment order dismissing plaintiff's ordinary negligence claim. Applying that standard, we conclude that the forecast evidence before the court was not sufficient to maintain a claim of gross negligence, and we grant summary judgment in favor of defendants on that basis. Thus, we need not consider plaintiff's spoilation or constitutional claims as there is no longer an issue of underlying liability to which defendants may be subject, rendering moot these remaining issues. *See Anderson v. Assimos*, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002) (acknowledging the long-held principle of judicial restraint that "the courts of this State will avoid constitutional questions, even if properly presented, where a case may be resolved on other grounds.").

We now turn to consider the merits of these appeals.

## II. Plaintiff's Appeal: N.C. Gen. Stat. § 20-145

[1] Plaintiff contends that N.C. Gen. Stat. § 20-145 (2003) is inapplicable to the facts and circumstances of this case. In the alternative, she submits that, even if this is the applicable statute, the trial court

erred in applying the gross negligence standard of care to Officer Kelly's conduct. We do not agree.

N.C. Gen. Stat. § 20-145 provides the following:

> The speed limitations set forth in this Article shall not apply to vehicles when operated with due regard for safety under the direction of the police in the *chase or apprehension of violators of the law or of persons charged with or suspected of any such violation*, nor to fire department or fire patrol vehicles when traveling in response to a fire alarm, nor to public or private ambulances and rescue squad emergency service vehicles when traveling in emergencies, nor to vehicles operated by county fire marshals and civil preparedness coordinators when traveling in the performances of their duties. This exemption shall not, however, protect the driver of any such vehicle from the consequence of a reckless disregard of the safety of others.

(Emphasis added.) Our Supreme Court has held that the standard of care a police officer must use when acting within the contours of this statute is that of "gross negligence." *Young v. Woodall*, 343 N.C. 459, 462, 471 S.E.2d 357, 359 (1996).

Before our Supreme Court's opinion in *Young*, the extent of liability under N.C. Gen. Stat. § 20-145 was unclear. A previous opinion of the Court read N.C. Gen. Stat. § 20-145 to apply the gross negligence standard only to that of the police officer's speed, stating, "the speed law exemption is effective only when the officer *operates* his car 'with due regard to safety' and does not protect him 'from the consequences of a reckless disregard of the safety of others." *Goddard v. Williams*, 251 N.C. 128, 133, 110 S.E.2d 820, 824 (1959) (emphasis added). Thus, pursuant to *Goodard*, an officer was held to two different standards of care, gross negligence as to his speed, and ordinary negligence for general operation of the vehicle. However, in *Young* our Supreme Court clarified that the gross negligence standard applied to both violations of the relevant speed limitations for the vehicle, and to the operation of the vehicle during the event of the justified increased speed. *Young*, 343 N.C. at 462-63, 471 S.E.2d at 359-60, *overruled by Goodard*, 251 N.C. at 133, 110 S.E.2d at 824 (1959). The Court stated, "We do not believe the General Assembly intended to provide two different standards of care in one section of the statute." *Young*, 343 N.C. at 462, 471 S.E.2d at 359.

Plaintiff submits that Officer Kelly's conduct was related to an "emergency response," and thus not governed by N.C. Gen. Stat.

§ 20-145 which she reads to govern only cases of police pursuit. However, the statute plainly allows for increased speed "in the chase *or apprehension* of violators of the law or of persons charged with or suspected of any such violation[.]" N.C. Gen. Stat. § 20-145 (emphasis added). We read the statute's use of "or" to mean an officer is exempt from speed restrictions when going to assist another officer to *apprehend* a suspect in a single location, even when unrelated to any "chase." Had the legislature chosen to limit the speed exemption to apprehension of those suspects only produced from a chase, arguably they would have used the conjunction "and."

Furthermore, another panel of our Court has read this statute to provide the following:

> The language of G.S. 20-145 is broad enough to include not only police in direct or immediate pursuit of law violators or suspected violators but also police who receive notice of the pursuit and *respond by proceeding to the scene for the purpose of assisting in the* chase or *apprehension.*

*State v. Flaherty*, 55 N.C. App. 14, 22, 284 S.E.2d 565, 571 (1981) (emphasis added). The issue in *Flaherty* was whether a police officer, found guilty of manslaughter, was availed of the benefits of a proper jury charge based on N.C. Gen. Stat. § 20-145 where the court asked the jury to apply the standard of ordinary negligence. *Id.* at 16-17, 284 S.E.2d at 567-68. Finding error, we granted a new trial based on this improper instruction. While the facts of *Flaherty* did involve a pursuit, the officer in question was responding to a call for assistance in the pursuit and at no time joined in the actual pursuit or even observed the suspect being chased. *Id.* The Court in *Flaherty* focused on the defendant's emergency response and made no mention of any limitation of N.C. Gen. Stat. § 20-145 to cases of a police pursuit.

Lastly, we note that the statute reflects due regard for emergency response situations other than criminal apprehension, *e.g.*, fires and medical emergencies. We believe assisting an officer in peril falls within the statute's purview as well. Generally, there will be a lesser degree of public risk created in emergency response cases because the speed of the responder does not escalate the level of the imminent peril itself, unlike that of a vehicle "chase."

Based upon a plain reading of the statute and our prior interpretation of its expanse in *Flaherty*, we find that Officer Kelly's conduct in the case at bar was governed by N.C. Gen. Stat. § 20-145.

Next, plaintiff submits that, even if defendant's emergency response is governed by N.C. Gen. Stat. § 20-145, the gross negligence standard only applies to a responding officer's speed and not the overall operation of his vehicle. In light of our Supreme Court's holding in *Young* and its specific rejection of such a dual standard, we find this argument to be without merit. *See Flaherty,* 55 N.C. App. at 15, 284 S.E.2d at 565 (where the Court allowed gross negligence to be applied to evidence that the officer ran a red light at the intersection where the accident occurred and the officer failed to activate his blue lights or siren).

Therefore, we affirm the trial court's grant of summary judgment on plaintiff's ordinary negligence claim.

## III. Defendants' Appeal: Gross Negligence

[2] Defendants assert that the trial court erred in finding that the forecast evidence presented an issue of fact as to plaintiff's claim of gross negligence. We agree and dismiss this case on that ground without review of those claims made moot by our summary dismissal.

Pursuant to N.C. Gen. Stat. § 20-145, "[t]he standard of care intended by the General Assembly involves the reckless disregard of the safety of others, which is gross negligence." *Young,* 343 N.C. at 462, 471 S.E.2d at 359. Accordingly, for a plaintiff to survive a motion for summary judgment based on a police officer's violation of this standard, she must forecast evidence that the officer's conduct was "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Bullins v. Schmidt,* 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988). "A wanton act is one 'done of wicked purpose [sic] or when done needlessly, manifesting a reckless indifference for the rights of others.'" *Fowler v. N.C. Dept. of Crime Control & Public Safety,* 92 N.C. App. 733, 736, 376 S.E.2d 11, 13, *disc. review denied,* 324 N.C. 577, 381 S.E.2d 773 (1989) (citation omitted).

Citing *Clayton v. Branson,* 153 N.C. App. 488, 570 S.E.2d 253 (2003), plaintiff asserts that the trial court was correct in finding an issue of fact as to whether Officer Kelly's conduct rose to a level of gross negligence. In that case we found an issue of fact that a police officer's conduct breached a level of gross negligence where evidence suggested plaintiff was placed in the back of a police squad car in custody and ordered to sit in a fashion where he was unable to put on his seatbelt. *Id.* at 490, 570 S.E.2d at 255. The officer then proceeded to drive through heavy traffic at a rate of speed two times the speed

limit. *Id.* at 492-93, 570 S.E.2d at 256. In that case, we affirmed the trial court's determination that an issue of material fact existed as to whether the officer was acting within the scope of his official duties for such conduct. *Id.* In *Clayton*, we did not address the gross negligence standard in light of N.C. Gen. Stat. § 20-145, nor was it apparently argued as such. Furthermore, there are no facts presented in the opinion suggesting the officer's high rate of speed would fall within the justification of N.C. Gen. Stat. § 20-145. Thus, we find *Clayton* to be of little legal or factual guidance to the case at bar.

Rather, in determining whether an officer was grossly negligent in police pursuit or for purposes of apprehension pursuant to N.C. Gen. Stat. § 20-145, our courts have looked to a number of factors to determine whether the claim was sufficient to survive summary judgment. *See Norris v. Zambito*, 135 N.C. App. 288, 294, 520 S.E.2d 113, 117 (1999) (citing an extensive list of cases for the factors considered by this Court and our Supreme Court for a determination of gross negligence). The three primary factors summarized by our Court in *Norris* were found to be: 1) the reason for the officer to be in pursuit; 2) the probability of harm to the public in light of such pursuit and its continuation; and 3) evidence with respect to the law enforcement officer's conduct during the pursuit. *Id.* at 294-95, 520 S.E.2d at 117-18.

Applying these factors to the forecast evidence of the case at bar and viewing such in a light most favorable to plaintiff, we conclude that plaintiff did not demonstrate the existence of a genuine issue of material fact as to gross negligence on the part of Officer Kelly, and judgment as a matter of law should have been rendered denying plaintiff's gross negligence claim against defendants. In response to Officer Fox's two distress calls, Officer Kelly responded to apprehend the threatening suspect and defuse what he believed to be a life or death situation of a fellow Durham police officer. In pursuit of the situation, there was some dispute as to what speed Officer Kelly was alleged to have been traveling. In a light most favorable to plaintiff, this speed varied between 55 and 74 miles per hour on a road where the speed limit was 35 miles per hour. *Zambito*, 135 N.C. App. at 291, 520 S.E.2d at 115 (officer not grossly negligent where he testified his car never exceeded 65 miles per hour where the posted speed limit was 35 miles per hour and the pursuit was of a drunk driver lasting less than a mile). Moreover, the apparent probability of harming the public was low at the time of the emergency response; it was a cool, clear, and dry day, with a bright sun and the officer had activated his blue lights and siren to respond to an emergency only 2-½ miles from

his location. Plaintiff's own deposition shows she heard sirens before crossing the road. Lastly, while there was evidence of Officer Kelly's negligent conduct when going airborne over the railroad tracks before entering the intersection, he did not violate the traffic signal in going through the intersection. Plaintiff, in violation of the traffic signal and outside of any designated crosswalk, was at the double yellow line of the road when observed by Officer Kelly at a distance of 300-332 feet. At that point, she was two-thirds of the way across Liberty Street. Plaintiff has forecast no evidence of wanton conduct to rebut the material fact of record that Officer Kelly steered his vehicle into the wrong lane of traffic where there was a larger area to evade hitting plaintiff, in due regard for plaintiff's safety and in anticipation that she would attempt to get out of the traffic lanes by the shortest distance possible. Defendants' forecast evidence showed that this evasive maneuver was consistent with the emergency response procedures of law enforcement officers. Plaintiff's forecast evidence on this point suggested Officer Kelly "breach[ed] his duty of care" when failing to apply his brakes or slow his vehicle to avoid collision. Thus, plaintiff raises an issue of fact only as to a claim in negligence, which we find to be immaterial to the standard of gross negligence in this case. *Norris*, 135 N.C. App. at 291, 520 S.E.2d at 115 (where the Court determined "evidence of violation [of the city's pursuit policy] would not show gross negligence. A violation of voluntarily adopted safety policies is merely some evidence of negligence and does not conclusively establish negligence."). Thus, we find the forecast evidence of Officer Kelly's conduct bereft of a material fact of wickedness or of any indifference for the rights or safety of others. *See Young*, 343 N.C. at 460, 471 S.E.2d at 358 (the Supreme Court reversing the trial court's denial of summary judgment and finding no gross negligence as a matter of law where a police officer ran through a yellow-signaled intersection at a high rate of speed and without his blue lights activated, crashing into an oncoming car); *c.f., D'Alessandro v. Westall*, 972 F. Supp. 965, 971-76 (W.D.N.C. 1999) (the District Court, in applying the gross negligence standard under N.C. Gen. Stat. § 20-145 as interpreted by North Carolina appellate courts, found summary judgment was not proper where the forecast evidence showed an extensive list of violations of police procedures by two different police agencies in a dangerous and extensive high speed chase; that the pursuing officers had with them young, non-commissioned, "explorer scouts" riding as part of a program to introduce prospective deputies; and that the officers were on notice that a ten-month-old infant was in the fleeing vehicle.).

Because plaintiff has not forecast sufficient evidence to show a genuine issue of material fact as to gross negligence on the part of Officer Kelly, defendants are entitled to judgment as a matter of law. We hereby direct the trial court to enter summary judgment dismissing plaintiff's claims against defendants as all claims are made moot by this opinion.

Affirmed in part, reversed in part.

Judge ELMORE concurs.

Judge LEVINSON concurs in part and dissents in part.

LEVINSON, Judge dissenting in part and concurring in part.

I concur with the majority's application of a gross negligence standard to the facts of this case, and with its upholding of the trial court's dismissal of plaintiff's claim of simple negligence. However, I believe there are genuine issues of material fact regarding plaintiff's claim of gross negligence, and dissent from the majority opinion's reversal of the trial court's denial of defendant's motion for summary judgment on that claim. I also dissent from the majority's holding that plaintiff's constitutional claim and her claim for obstruction of justice are moot. I would uphold the trial court's denial of defendants' summary judgment motion as to obstruction of justice, and reverse for entry of summary judgment for defendants on plaintiff's claim of violation of her rights to due process and equal protection under N.C. Const. art. 1, § 19. Additionally, I believe that defendants are entitled to assert sovereign immunity at trial, to the extent that they have not waived immunity by the purchase of liability insurance.

The majority concludes the record evidence raises no genuine issues of material fact as to whether defendant Kelly was grossly negligent. I respectfully disagree. "Summary judgment is a drastic measure, and should be approached cautiously." *Neill Grading & Constr. Co. v. Lingafelt*, 168 N.C. App. 36, 48, 606 S.E.2d 734, 742 (2005) (citation omitted). "In ruling on a motion for summary judgment, a trial court may not resolve issues of fact and must deny the motion if there is a genuine issue as to any material fact." *RD&J Properties v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 742, 600 S.E.2d 492, 497 (2004) (citation omitted). Thus, "[s]ummary judgment is not appropriate where matters of credibility and determining the weight

of the evidence exist." *Lee v. R & K Marine, Inc.*, 165 N.C. App. 525, 527, 598 S.E.2d 683, 684 (2004).

In the instant case, the question is whether the evidence raises any genuine issue of material fact on the issue of gross negligence. Regarding gross negligence by a law enforcement officer, this Court has held:

> An officer 'must conduct a balancing test, weighing the interests of justice in apprehending the fleeing suspect with the interests of the public in not being subjected to unreasonable risks of injury.' 'Gross negligence' occurs when an officer consciously or **recklessly disregards an unreasonably high probability of injury to the public despite the absence of significant countervailing law enforcement benefits**.

*Eckard v. Smith*, 166 N.C. App. 312, 319, 603 S.E.2d 134, 139 (2004) (quoting *Parish v. Hill*, 350 N.C. 231, 236, 513 S.E.2d 547, 550 (1999)) (emphasis added).

Viewed, as it must be, in the light most favorable to the plaintiff, the record evidence would allow a jury to find that: (1) Kelly was not pursuing an escaping felon, but was responding to Officer Fox's call for assistance with a situation whose nature Kelly knew nothing about; (2) Kelly knew other officers had also responded to the call for backup, so that Officer Fox was not solely dependent on his aid; (3) Kelly was familiar with the street where the accident occurred, and knew it was a densely populated urban area; (4) as Kelly approached the accident site he was driving between 50 and 74 mph, and did not have his blue light and siren activated; (5) Kelly knew that the intersection of Liberty and Elizabeth Streets had been the site of several previous accidents, and that there were "people hanging out" there; (6) Kelly knew from previous experience that the safest maximum speed on the relevant stretch of Liberty Street was 45 mph; (7) Kelly did not apply his brakes when he saw plaintiff in his way; (8) Kelly lost control of his vehicle and struck plaintiff with such force that she suffered serious injuries; and (9) Kelly's failure to drive at a safe speed for road conditions was a violation of the Basic Law Enforcement Training manual. I conclude that this evidence, if believed by the jury, tended to show a "high probability of injury to the public despite the absence of significant countervailing law enforcement benefits," *id.*, and thus raises a genuine issue of material fact on the question of gross negligence. Accordingly, I believe the trial court correctly denied defendants' motion for summary judg-

ment on plaintiff's claim for damages based on Kelly's alleged gross negligence, and would submit the case to a jury.

Plaintiff also brought a claim for obstruction of public justice. "Obstruction of justice is a common law offense in North Carolina." *In re Kivett*, 309 N.C. 635, 670, 309 S.E.2d 442, 462 (1983). "It is an offense to do any act which prevents, obstructs, impedes or hinders public or legal justice." *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 33, 588 S.E.2d 20, 30 (2003) (citing *Burgess v. Busby*, 142 N.C. App. 393, 408-09, 544 S.E.2d 4, 12 (2001)). In the instant case, the evidence would allow a jury to conclude that a camera in Kelly's police car had made a videotape recording of the accident, and that the videotape was subsequently misplaced or destroyed. I would affirm the trial court's denial of defendants' motion for summary judgment on this claim.

The majority concludes that, upon dismissal of plaintiff's underlying negligence claims, her constitutional claim is moot. However, as I would vote to allow plaintiff's underlying claims to proceed for trial, I also address plaintiff's constitutional claim.

Plaintiff's complaint alleges that defendant City of Durham (the City) violated her rights under N.C. Const. art. 1, § 19 "by their assertion of the defense of governmental immunity to the Plaintiff's first two claims for relief in this civil action." She also contends that the City's "assertion of governmental immunity as a legal defense to the Plaintiff's first two claims for relief constitutes an unreasonable, arbitrary, and capricious governmental action." I disagree, and would vote to reverse the trial court and remand for entry of summary judgment in favor of **defendants** on plaintiff's constitutional claim. I reach this conclusion for several reasons.

Preliminarily, it is important to note that the trial court's order mistakenly characterizes plaintiff's suit as presenting a challenge to the facial constitutionality of the City's practices for handling claims against it. Plaintiff's complaint is strictly limited to allegations that defendants violated her state constitutional rights by asserting sovereign immunity "**in this cause**" as a defense to "Plaintiff's first two claims." Thus, plaintiff challenges the manner in which the city's policies have been **applied to her**, rather than making the separate and distinct claim that the City's customs are facially unconstitutional. *See Maines v. City of Greensboro*, 300 N.C. 126, 130, 265 S.E.2d 155, 158 (1980) (discussing the two types of claims where plaintiff "first contends that the ordinance is unconstitutional on its face . . . alter-

native[ly], plaintiff argues that the ordinance is unconstitutional as applied"). However, the trial court's order repeatedly refers to plaintiff's having brought claims against the city's assertion of sovereign immunity "in this **and other cases**." This is an erroneous characterization of plaintiff's complaint, which properly should be analyzed as a challenge to the City's policies for handling claims, as the policies have been applied to her.

I conclude that plaintiff failed to present evidence raising a genuine issue of material fact on her constitutional claim. The core of plaintiff's argument is her allegation that the City has a policy or practice of "waiving" sovereign immunity in some cases but not in others. She further alleges that the City's determination of when to "waive sovereign immunity" resides in the "unbridled discretion" of certain city employees, and that the City's waiver of sovereign immunity for certain "similarly situated" claimants violates her rights to due process and equal protection. Plaintiff's argument rests on the **erroneous** premise that the City has a practice of selectively "waiving" the defense of sovereign immunity. The uncontradicted record evidence establishes that claims against the City are never denied on the basis of sovereign immunity, and that claims are paid or denied on the basis of their legal merits, based on evaluation of whether (1) the claimant asserts a legally cognizable cause of action; (2) investigation shows the claim to be meritorious; and (3) the damages have been documented. Plaintiff presents no evidence that defendant ever **denies** a claim based on sovereign immunity. However, if sued by a claimant, the City always raises the defense of sovereign immunity when appropriate. Thus, the City **never** denies claims based on sovereign immunity, but **always** asserts the defense if it is sued. Accordingly, there is no evidence that defendants have a practice of "selectively waiving" this defense.

Nor does the City's practice of executing settlement contracts with certain claimants constitute a waiver of sovereign immunity in those cases. " 'Whether denominated accord and satisfaction or compromise and settlement, the executed agreement terminating or purporting to terminate a controversy is a contract, to be interpreted and tested by established rules relating to contracts.' " *Bolton Corp. v. T. A. Loving Co.*, 317 N.C. 623, 628, 347 S.E.2d 369, 372 (1986) (quoting *Casualty Co. v. Teer Co.*, 250 N.C. 547, 550, 109 S.E.2d 171, 173 (1959)). The representative settlement form in the record makes no mention of sovereign immunity or of a waiver of that or any other defense. Further, it specifically states that:

This release expresses a full and complete settlement of a liability claimed and denied, . . . and the acceptance of this release shall not operate as an admission of liability on the part of anyone **nor as an estoppel, waiver, or bar with respect to any claim the party or parties released may have against the undersigned.**

(emphasis added). Thus, should a tort claimant violate the settlement agreement by suing the City after executing the settlement contract, the City would be entitled to raise any applicable defense, including satisfaction and accord, or sovereign immunity. Plaintiff presents no evidence that the City ever executed a settlement contract **waiving** the right to assert sovereign immunity in the event that the claimant tried to sue the City after executing the settlement contract.

Moreover, even if we assume, *arguendo*, that the City has waived sovereign immunity in certain cases, plaintiff has not presented evidence that the City's practices violated her due process or equal protection rights under the State constitution. " '[T]he touchstone of due process is protection of the individual against arbitrary action of government,' . . . Arbitrary and capricious acts by government are also prohibited under the Equal Protection Clauses of the United States and the North Carolina Constitutions." *Dobrowolska v. Wall*, 138 N.C. App. 1, 14, 530 S.E.2d 590, 599 (2000). Further:

The equal protection 'principle requires that all persons similarly situated be treated alike.' Accordingly, to state an equal protection claim, a claimant must allege (1) the government (2) arbitrarily (3) treated them differently (4) than those similarly situated.

*Lea v. Grier*, 156 N.C. App. 503, 509, 577 S.E.2d 411, 416 (2003) (quoting *Dobrowolska, id.*). In another case challenging a city's exercise of discretion, *Maines v. City of Greensboro*, 300 N.C. 126, 131-32, 265 S.E.2d 155, 158-59 (1980), the North Carolina Supreme Court held that:

[A]n ordinance which vests unlimited or unregulated discretion in a municipal officer is void. . . . On the other hand, actions of public officials are presumed to be regular and done in good faith[,] and the burden is on the challenger to show that the actions as to him were unequal when compared to persons *similarly situated*. The initial question then is whether plaintiff has met his burden of showing that he received treatment different from others similarly situated.

In the instant case, plaintiff has failed to show either that (1) similarly situated claimants are not treated equally, or that (2) the determination not to waive sovereign immunity in her case was arbitrary and capricious.

Plaintiff has not shown she was treated differently from "**similarly situated**" claimants. She has assembled a long list of claimants from a given time period. However, she articulates no "similarity" between her case and those of claimants receiving settlements, other than having brought a claim, which may or may not involve a law enforcement officer, against the City of Durham. There is no information about the relative merits of claims, the similarity or differences in claimant's background, or other information that would enable us to conclude that plaintiff had been treated differently from similar claimants.

Nor does the evidence raise an issue of fact regarding whether the city's decision not to settle her particular claim was arbitrary and capricious. "Not every deprivation of liberty or property constitutes a violation of substantive due process granted under article I, section 19. Generally, any such deprivation is only unconstitutional where the challenged law bears no rational relation to a valid state objective." *Affordable Care Inc. v. N.C. State Bd. of Dental Exam'rs*, 153 N.C. App. 527, 535, 571 S.E.2d 52, 59 (2002) (citing *Rhyne v. K-Mart Corp.*, 149 N.C. App. 672, 562 S.E.2d 82 (2002), *aff'd*, 358 N.C. 160, 594 S.E.2d 1 (2004)). In the instant case, defendants presented ample evidence supporting their decision that plaintiff's claim was not meritorious.

Further, I strongly disagree with plaintiff that the holding of *Dobrowolska* controls the result in the instant case. The defendant in *Dobrowolska*, the City of Greensboro, customarily responded to **all** claims for damages by asserting the defense of sovereign immunity. Thereafter, the City would sometimes waive the defense and enter into a settlement agreement:

[A]t the same time the City has asserted governmental immunity towards plaintiffs . . . it has **asserted such immunity** against injured individuals similar to plaintiffs, **but then waived immunity** by paying damages to those injured individuals. . . . The City has opted to pay damages to some claimants **after asserting** governmental immunity; therefore, it must carry out this custom, or 'unwritten' policy in a way which affords due process to all similarly situated tort claimants . . . [The City] classifies claims . . . into two different categories—(1) immunity is

**asserted with no exception,** or (2) immunity is **asserted but the claim is paid in settlement.**

*Dobrowolska,* 138 N.C. App. at 12-13 and 17, 530 S.E.2d at 598-99 and 601 (emphasis added). This contrasts sharply with Durham's policy of never asserting sovereign immunity as a basis for denial of a claim, and of always asserting it in response to a lawsuit. Further, unlike defendant City in *Dobrowolska,* Durham does not leave decisions about settlement of cases to the unfettered discretion of city employees. As discussed above, the uncontroverted evidence is that claims against the City are resolved by determination of whether the claimant (1) presents a legally cognizable claim, that (2) is meritorious, as shown by investigation into the facts, and (3) has documented injuries.

"[Plaintiff's] position results from the assumption that the [City of Durham] may purposely and wilfully abuse the discretion with which the law invests it. **It is hard to see how any administrative body can function without exercising discretion;** but even then the discretion must not be whimsical, or capricious, or arbitrary, or despotic." *North Carolina State Highway Com. v. Young,* 200 N.C. 603, 607, 158 S.E. 91, 93 (1931) (emphasis added). A party's determination of whether to settle a claim will **always** require exercise of discretion and the weighing and assessment of largely subjective factors, such as the credibility and demeanor of prospective witnesses, or the likely response of a jury to certain evidence. It also requires evaluation of legal issues such as a claim's validity, the impact of relevant precedent on trial issues, or the availability of affirmative defenses. Accordingly, the determination of how to respond to a claim brought against the City is akin to other discretionary judgments that cannot be reduced to a mathematical formula, such as decisions about hiring, firing, or resource allocation. The process is very different from that involved in decisions about zoning, permitting, or eligibility for public services, because such determinations can be reduced to an objective set of criteria.

Indeed, the gravamen of plaintiff's claim is in reality a challenge to the inequality in bargaining strength between a tort claimant and the City. Ordinarily, if parties cannot settle a civil dispute, a plaintiff has the option of filing suit. However, if sovereign immunity is available as a defense, then the plaintiff has no recourse if a settlement cannot be reached. Thus, plaintiff seeks to redress the reality that the City can decide whether or not to settle claims, while plaintiff lacks the usual power to bring suit if the claim is not settled. During the

hearing on these motions, plaintiff's counsel conceded as much, stating to the trial court that:

> . . . [O]ur purpose in bringing these declaratory and injunctive claims is to stop [the City] from having the ability to . . . pay some claims, but also to unilaterally assert immunity[.]
>
> . . . .
>
> Because they have immunity, they can browbeat citizens into taking whatever it is they're willing to offer.
>
> . . . . **That's our reason for bringing this case, . . . to put everybody on equal footing**.

"The plaintiff asks us either to abolish governmental immunity or to change the way it is applied. . . . [A]ny change in this doctrine should come from the General Assembly." *Blackwelder v. City of Winston-Salem*, 332 N.C. 319, 324, 420 S.E.2d 432, 435-36 (1992). "It may well be that the logic of the doctrine of sovereign immunity is unsound and that the reasons which led to its adoption are not as forceful today as they were when it was adopted. However, despite our sympathy for the plaintiff in this case, we feel that any further modification or the repeal of the doctrine of sovereign immunity should come from the General Assembly, not this Court." *Steelman v. City of New Bern*, 279 N.C. 589, 595, 184 S.E.2d 239, 243 (1971).

Finally, even if we **were** to hold that the City's policies governing its decisions of when to waive sovereign immunity were constitutionally infirm, defendants would nonetheless be entitled to assert sovereign immunity in this case. "A police officer in the performance of his duties is engaged in a governmental function." *Galligan v. Town of Chapel Hill*, 276 N.C. 172, 175, 171 S.E.2d 427, 429 (1970). "In general, municipalities in North Carolina are immune from liability for their negligent acts arising out of governmental activities unless the municipality waives such immunity by purchasing liability insurance." *Anderson v. Town of Andrews*, 127 N.C. App. 599, 600, 492 S.E.2d 385, 386 (1997). Under N.C.G.S. § 160A-485(a) (2003), "[a]ny city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance. . . . Immunity shall be waived only to the extent that the city is indemnified by the insurance contract from tort liability." However, the statute also provides that "no city shall be deemed to have waived its tort immunity **by any action other than** the purchase of liability insurance." (emphasis added). Our appellate courts have consistently held that "N.C.G.S. § 160A-485 provides that

## JONES v. CITY OF DURHAM

[168 N.C. App. 433 (2005)]

the **only** way a city may waive its governmental immunity is by the purchase of liability insurance." *Blackwelder v. City of Winston-Salem,* 332 N.C. 319, 324, 420 S.E.2d 432, 435 (1992) (emphasis added). In *Blackwelder,* defendant City formed a corporation to handle claims against the City of less than $1,000,000. The North Carolina Supreme Court held that this corporation (RAMCO), was not liability insurance and therefore did not constitute a waiver of sovereign immunity. The Court also held that:

> Finally, the plaintiff contends that the City has violated the Equal Protection Clause of the Fourteenth Amendment . . . and Article I, Section 19 of the Constitution of North Carolina[,] . . . because the City, through RAMCO, can pick and choose what claims it will pay, thus depriving the plaintiff of the equal protection of the law. . . . **If we were to hold the City has acted unconstitutionally . . . it would not mean the City had waived its governmental immunity.** The most we could do is strike down RAMCO. A decision involving this constitutional question would not resolve this case and we do not consider it.

*Blackwelder* 332 N.C. 325-26, 420 S.E.2d at 436-37 (emphasis added).

Similarly, in *Ripellino v. N.C. School Bds. Ass'n,* 158 N.C. App. 423, 581 S.E.2d 88 (2003), *cert. denied,* 358 N.C. 156, 592 S.E.2d 694 (2004), plaintiffs were injured while driving through a traffic control gate on school property. Defendant school board paid plaintiffs for their property damage, but would not pay medical expenses or other compensation. Plaintiffs argued that, because defendants compensated them for property damage, they should be estopped from asserting sovereign immunity on their other claims. This Court held:

> A waiver of sovereign immunity must be established by the General Assembly. "Our Supreme Court has stated that 'it is for the General Assembly to determine when and under what circumstances the State [and its political subdivisions] may be sued.' " . . . **[Sovereign immunity] 'should not and cannot be waived by indirection or by procedural rule. . . . If a court could estop the Board from asserting an otherwise valid defense of sovereign immunity, 'then, effectively, that court, rather than the General Assembly, would be waiving [the Board's] sovereign immunity.'**

*Id.* at 429, 581 S.E.2d at 93 (quoting *Wood v. N.C. State Univ.,* 147 N.C. App. 336, 338 and 347, 556 S.E.2d 38, 40 and 45 (2001) (quoting

*Guthrie v. State Ports Authority*, 307 N.C. 522, 534, 299 S.E.2d 618, 625)) (emphasis added).

In sum, plaintiff has raised genuine issues of material fact in her claims for obstruction of justice and gross negligence, and I would remand for jury trial on these substantive claims. At trial, defendants are entitled to assert sovereign immunity to the extent that they have not waived the defense by purchase of liability insurance. Plaintiff has failed to present evidence that the City's decision not to pay her claim violated her constitutional rights, and has failed to present evidence that defendant City of Durham selectively waives the defense of sovereign immunity, or that its handling of claims against the city is arbitrary and capricious. Moreover, even if the City were required to change its policies for settling cases, it would still be able to assert sovereign immunity in this case. Accordingly, I would vote to affirm the trial court's denial of defendants' summary judgment motion with respect to plaintiff's negligence and obstruction of justice claims, and remand for entry of summary judgment for defendants on plaintiff's constitutional claims.