NANCY A. VILLEPIGUE, Executrix of the Estate of JAMES R. VILLEPIGUE, Plaintiff v. CITY OF DANVILLE, VIRGINIA; TRAVIS GILES and WILLIAM CHANEY, Defendants

No. COA07-876

(Filed 6 May 2008)

**1. Police Officers— high speed chase—lack of wanton conduct**

In a wrongful death action arising from a police chase, the trial court did not err by basing summary judgment on defendant's lack of wanton conduct. Plaintiff's argument to the contrary

relies on an definition of willful or wanton conduct in an irrelevant statute that deals with punitive damages. Moreover, cases involving excessive speed and ordinary negligence did not concern police pursuits and are also irrelevant.

**2. Police Officers— high speed chase—gross negligence contention—summary judgment**

There was no material issue of fact as to gross negligence in a wrongful death action arising from a high-speed police chase. The accident was not caused by any action of defendant, but by the pursued driver's reckless driving and ultimate collision with the decedent. The weather was clear, the road relatively straight, it was mid-afternoon on a Sunday, and the officer was unaware of the upcoming intersection's activity, the victim's car, or the stopped line of traffic directly in front of his vehicle.

**3. Police Officers— high speed chase—supervision of officer**

The trial court did not err in a wrongful death action arising from a high-speed police chase by granting summary judgment for defendants where plaintiff argued that the trial court did not adequately consider facts concerning the supervision of the officer by the Danville Police Department. There was no evidence that defendant's supervisors failed to follow proper procedures under the circumstances of the case; the officer determined (mistakenly) that adequate cause for pursuit existed, radioed in to report his speed, and asked for permission to enter North Carolina. He followed procedure and maintained reasonable contact with dispatch.

Appeal by plaintiff from an order entered 2 April 2007 by Judge Howard E. Manning, Jr. in Caswell County Superior Court. Heard in the Court of Appeals 6 February 2008.

*David E. Blum, Pro Hac Vice; Tharrington Smith, L.L.P., by F. Hill Allen, for plaintiff-appellant.*

*Cranfill Sumner & Hartzog LLP, by Dan M. Hartzog and Kari R. Johnson, for defendant-appellees.*

HUNTER, Judge.

Nancy A. Villepigue, as Executrix of the Estate of James R. Villepigue ("plaintiff"), commenced a wrongful death action against the City of Danville, Virginia ("the City"), and Officer Travis Giles

VILLEPIGUE v. CITY OF DANVILLE, VA

[190 N.C. App. 359 (2008)]

("defendant").[1] Mr. Villepigue was killed in an automobile accident involving a police pursuit of Doyle Terry by defendant. Plaintiff appeals from the trial court's granting of defendants' motion for summary judgment entered on 29 March 2007, dismissing all claims against defendants. After careful consideration, we affirm.

On 16 November 2003, defendant, a Danville police officer, observed a truck "r[oll] through" a stop sign in Danville, stop in the middle of the road, and then accelerate so hard his tires spun. The truck was driven by Doyle K. Terry. Defendant began to follow Terry and activated his blue lights in order to initiate a stop. Terry did not pull over, but began driving at a high rate of speed towards the North Carolina state line. Defendant believed Terry to be driving under the influence and therefore began pursuit.

During the chase, defendant witnessed Terry drive "erratically and recklessly" and left of center, almost hitting the median. Moreover, defendant observed Terry "side swipe[]" another vehicle. Terry again did not pull over. The pursuit was nearing the state line and under Danville Police Department Procedures ("DPDP"), officers may only pursue across state lines subjects who have committed one of certain enumerated felonies. Defendant believed this to be a felony hit-and-run, one such enumerated felony, and believed further that Terry "posed an imminent threat."

As the pursuit neared the state line, as required by the DPDP, defendant radioed dispatch, indicated his speed was sixty-five miles per hour ("m.p.h."), and asked for authorization to continue the pursuit into North Carolina. Authorization was given by Sergeant Thomas A. Brooks. Defendant continued the chase into North Carolina on NC Highway 86. Prior to this point, defendant had used his siren only when necessary; however, after crossing the North Carolina line, he used his siren continuously.

The pursuit continued in North Carolina for approximately twenty seconds, during which there was no communication among defendant, dispatch, or North Carolina authorities. Once in North Carolina, defendant passed multiple cars using his lights and siren. Although the exact speed of defendant cannot be determined, at times his speed exceeded 100 m.p.h.; his on-board Sensing and Diagnostic Module ("SDM") recorded his speed as follows: 106 m.p.h.

---

1. Although both the City and Officer Giles are defendants in this action, for ease of reference, we use the term "defendant" throughout this opinion to refer to Officer Giles only.

four seconds prior to the accident, ninety-eight m.p.h. three seconds prior, eighty-three m.p.h. two seconds prior, and sixty-eight m.p.h. one second prior.

Shortly before the Highway 86 intersection with RP 1503, Terry's vehicle ran into the left rear of a Plymouth Acclaim heading South on NC Highway 86. Due to the impact, Terry's vehicle veered into the northbound lane, "striking the left front fender area" of a Four-Runner, driven by decedent Villepigue, "at [a] very high speed and shearing the left front wheel." This caused the Four-Runner to spin into the path of defendant's police cruiser, at which point defendant "T-boned" the Four-Runner, causing serious injuries to both himself and Villepigue. Villepigue ultimately died at the scene. The Highway Patrol Report later determined that neither the victim nor defendant caused the accident, although the speed of defendant could have contributed to its severity.

NC Highway 86 is a narrow, two-lane road with no shoulders and a maximum speed limit of fifty-five m.p.h. The road surface is smooth and in good condition. Highway 86 is also straight and not "overly hilly," but there is a "sufficiently steep" grade of the highway which limits a driver's visibility until reaching the crest. Also, the highway intersects with RP 1503 approximately .08 miles from the North Carolina line. [NCHP Report at 3-4] The area is considered light residential and commercial and includes a gas station/convenience store, car dealership lot, and private homes, along with a Caswell County Public School just south of the NC-86/RP 1503 intersection.

At the time of the accident, the conditions were dry and visibility was good. There was moderate traffic in both the southbound and northbound lanes, including an oncoming tractor trailer. There were cars waiting to turn left onto RP 1503 from Highway 86 and pedestrian traffic, including horseback riders, near the intersection.

Plaintiff presents the following issues for this Court's review: (1) whether the trial court committed reversible error in its application of the gross negligence standard as requiring "wanton" conduct; (2) whether the trial court committed reversible error by granting summary judgment; and (3) whether the trial court committed reversible error in that it gave no consideration to the fact issues regarding the failure of supervision by the Danville Police Department.

I.

[1] Plaintiff first argues that the trial court committed reversible error by basing its determination in favor of summary judgment on

defendant's lack of "wanton" conduct. Plaintiff contends that describing gross negligence as "willful or wanton" is not proper due to the definition of that phrase under N.C. Gen. Stat. § 1D-5(7) (2007). This argument is without merit.

Plaintiff's argument relies on the definition of "willful or wanton" conduct from the punitive damage section of the North Carolina General Statutes (§ 1D). N.C. Gen. Stat. § 1D-5(7) defines "willful and wanton" as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." Plaintiff, in particular, relies on this provision's indication that " '[w]illful or wanton conduct' means more than gross negligence." N.C. Gen. Stat. § 1D-5(7). However, as noted, this definition comes from an entirely irrelevant statute—that concerning punitive damages—and plaintiff fails to consider the appropriate statute, N.C. Gen. Stat. § 20-145 (2007). N.C. Gen. Stat. § 20-145 provides an exemption to North Carolina's speed limitations to emergency vehicles, including police during pursuits. The only limitation put on the exemption is that it "shall not . . . protect the driver of any such vehicle from the consequence of a reckless disregard of the safety of others." N.C. Gen. Stat. § 20-145 (2007). This limitation is sometimes summarized and applied in relevant case law by use of the word "wanton." *See Parish v. Hill*, 350 N.C. 231, 239, 513 S.E.2d 547, 551 (1999) (defining gross negligence as "wanton conduct done with conscious or reckless disregard for the rights and safety of others") (citation omitted); *Bullins v. Schmidt*, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988) (same). The inclusion of the word "wanton" in police pursuit cases is simply a shorthand reference to this "reckless disregard" limitation. We see no evidence that suggests it is meant to refer to the definition of the word from a wholly unrelated statute, and as such, plaintiff's argument is without merit.

Plaintiff also argues that excessive speed alone may constitute negligence per se and that an ordinary negligence standard should be used, citing case law related to vehicular accidents in North Carolina. However, this argument is also misplaced because plaintiff relies on cases which do not concern police pursuits. *See Clayton v. Branson*, 153 N.C. App. 488, 570 S.E.2d 253 (2002); *Yancey v. Lea*, 354 N.C. 48, 550 S.E.2d 155 (2001). Therefore, even though speed and an application of ordinary negligence standard are considered in those cases, such considerations are irrelevant under these particular circumstances. Plaintiff's assignments of error are therefore rejected.

II.

**[2]** Plaintiff next argues that the granting of defendants' motion for summary judgment was improper because there were issues of material fact and, moreover, the evidence was sufficient to show that defendant's conduct was grossly negligent. Although the parties agree as to the majority of facts, whether the standard was actually met depends on the outcome of balancing these particular facts.

We review a trial court's grant of summary judgment *de novo*. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [a] party is entitled to a judgment as a matter of law.' " *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (alteration in original) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c)). "Evidence presented by the parties is viewed in the light most favorable to the non-movant." *Id.*

In determining whether gross negligence exists, in addition to the conduct of the pursuing officer and the reasons for the pursuit, "[c]ourts have discussed whether the officer used emergency lights, sirens and headlights, collided with any person, vehicle or object, kept his or her vehicle under control, followed relevant departmental policies regarding chases, violated generally accepted standards for police pursuits, and what the officer's speed was during the pursuit." *Norris v. Zambito*, 135 N.C. App. 288, 295, 520 S.E.2d 113, 117 (1999) (citations omitted).

North Carolina courts have also determined that:

> An officer "must conduct a balancing test, weighing the interests of justice in apprehending the fleeing suspect with the interests of the public in not being subjected to unreasonable risks of injury." "Gross negligence" occurs when an officer consciously or recklessly disregards an unreasonably high probability of injury to the public despite the absence of significant countervailing law enforcement benefits.

*Eckard v. Smith*, 166 N.C. App. 312, 319, 603 S.E.2d 134, 139 (2004) (citations omitted).

A.

The parties do not dispute that defendant was driving at a high rate of speed, that he passed multiple cars, that he was unfamiliar

with this particular road, and that his previous determination concerning the felony hit-and-run was erroneous. However, plaintiff contends that defendant's speed, traffic and road conditions, and defendant's awareness and judgment create issues of material fact.

As to speed, the parties dispute the amount of time defendant was actually in North Carolina as well as his precise speed during that time. The evidence, taken in the light most favorable to plaintiff, only shows that defendant might have been in North Carolina for longer than twenty seconds and that his speed was 106 m.p.h. four seconds before the accident and sixty-eight m.p.h. one second before the accident. There is no indication that defendant drove at excessive speed for any extended period of time, nor any evidence to support plaintiff's assertion that defendant ever reached 144 m.p.h. Moreover, absent other evidence, this does not contribute to any determination of gross negligence.

The parties also dispute the amount of activity at the intersection of NC-86 and Walter's Mill Road. Plaintiff asserts that this fact was not properly considered by the trial court as evidenced by its omission from the order granting summary judgment. However, findings of fact and conclusions of law are not required in the determination of motions for summary judgment. *See Sunamerica Financial Corp. v. Bonham*, 328 N.C. 254, 400 S.E.2d 435 (1991). Certainly, the trial court might have included them in its balancing test; regardless, the accident occurred before the intersection and involved a car which had already passed through it. As such, this fact appears to this Court irrelevant; at the very least, it is not determinative, nor does it establish an issue of material fact.

### B.

Plaintiff next asserts that defendant was unaware of decedent's car and demonstrated a lack of judgment in continuing the pursuit, citing defendant's testimony that he saw the victim's car "only seconds before the collision[.]" Plaintiff argues that this demonstrates defendant's lack of due regard for public safety and, thus, makes summary judgment improper, as it is evidence of defendant's "extreme recklessness." This argument is without merit.

Even taking plaintiff's version of the disputed facts—that defendant was unfamiliar with NC-86 and its traffic patterns, could not identify his speed over sixty-five m.p.h., and did not see the victim's car

until it was hit by Terry—as true, these facts do not contribute to the determination of whether defendant acted without due regard for public safety. They merely indicate that defendant may have been going faster than sixty-five m.p.h., that his attention was focused somewhere other than the victim's vehicle, and that defendant was unaware of the upcoming intersection. *See Jones v. City of Durham,* 361 N.C. 144, 146, 638 S.E.2d 202, 203 (2006) (even though not involving pursuit, the fact police officer knew the area was urban and densely populated contributed to possibility of gross negligence). Therefore, even plaintiff's version of these facts does not raise a material issue of fact as to gross negligence.

Plaintiff also argues that defendant's conduct met the gross negligence standard. This argument is without merit.

In reviewing North Carolina cases involving police pursuits, we can find no case where this Court or our Supreme Court has found that gross negligence existed. *See Bray v. N.C. Dep't of Crime Control and Pub. Safety,* 151 N.C. App. 281, 284, 564 S.E.2d 910, 912-13 (2002) (no gross negligence even where state trooper collided with oncoming vehicle during pursuit after losing control due to excessive speed; Court also noted that gross negligence standard is rarely, if ever, met); *Young v. Woodall,* 343 N.C. 459, 463, 471 S.E.2d 357, 360 (1996) (no gross negligence when officer did not activate his blue lights/siren, traveled at high speeds through intersection, and did not notify his superiors of his intention to pursue, all of which violated procedure); *Bullins v. Schmidt,* 322 N.C. at 582-84, 369 S.E.2d at 603-04 (no gross negligence where officers attempted to box in and slow defendant traveling at speeds near 100 m.p.h. and over long distance causing an accident on two-lane road); *Fowler v. N.C. Dept. of Crime Control and Public Safety,* 92 N.C. App. 733, 736, 376 S.E.2d 11, 13 (1989) (no gross negligence when officer, without lights or siren, speeding over 115 m.p.h., after midnight, through sparsely populated area tried to overtake a suspect after eight-mile chase causing wreck); *Norris v. Zambito,* 135 N.C. App. at 295, 520 S.E.2d at 217-18 (no gross negligence where police officer drove sixty-five m.p.h. in a thirty-five m.p.h. zone in pursuit at 1:00 a.m. even though he knew suspect and where to arrest him later); *Parish v. Hill,* 350 N.C. at 246, 513 S.E.2d at 556 (no gross negligence where police officer reached maximum speed of 130 m.p.h. on I-85.)

Plaintiff relies on the North Carolina Supreme Court decision in *Jones v. City of Durham,* 361 N.C. 144, 638 S.E.2d 202, for her argu-

**VILLEPIGUE v. CITY OF DANVILLE, VA**

[190 N.C. App. 359 (2008)]

ment as to gross negligence.[2] There, the Supreme Court reversed this Court's opinion which had reversed the denial of a summary judgment motion by the defendant police officer on the plaintiff's gross negligence claim; the Supreme Court held that genuine issues of material fact did exist. *Jones*, 168 N.C. App. at 452, 608 S.E.2d at 399. *Jones*, however, contains striking differences from the instant case. Most notably, *Jones* did not involve a police pursuit, but rather an officer responding to another officer's call for assistance. *Id.* at 444, 608 S.E.2d at 394. The responding officer was unaware of the details of the call; moreover, the officer knew the peculiarities of the location and the high probability that an accident may occur given his conduct—specifically, his failure to use lights and excessive speed through a residential neighborhood—as well as that other officers had responded to the call. *Id.* The officer in *Jones*, in addition, acted without due regard for public safety by not applying his brakes when he saw the plaintiff in his path. *Id.* Levinson, J., and thus our Supreme Court, concluded that the evidence tended to show that there was a material issue of fact as to whether the law enforcement benefits were outweighed by the likelihood of injury to the public. *Id.*; 361 N.C. at 146, 638 S.E.2d at 203.

In this case, defendant initiated a pursuit after he determined that Terry was intoxicated and on the mistaken assumption that defendant had committed a felony hit-and-run. These facts alone distinguish this case from *Jones*, because a significant public policy and law enforcement interest existed in removing Terry from the road. *See Eckard v. Smith*, 166 N.C. App. at 319, 603 S.E.2d at 139 (stating that in spite of the risks to " 'passengers, pedestrians, and other drivers that high-speed chases engender, but also the fact that if police are

---

2. The history of *Jones* is somewhat complex. On the first appeal to this Court, *Jones v. City of Durham*, 168 N.C. App. 433, 608 S.E.2d 387 (2005), the majority opinion affirmed the grant of summary judgment to the city on her ordinary negligence claim and reversed the order denying summary judgment to the city on plaintiff's gross negligence claim. Levinson, J., dissented, arguing that a genuine issue of material fact existed as to the gross negligence claim. *Id.* at 443, 608 S.E.2d at 394. This holding was affirmed by our Supreme Court, 360 N.C. 81, 622 S.E.2d 596 (2005), but on a motion for rehearing, the Supreme Court withdrew that opinion and entered the one reported at 361 N.C. 144, 638 S.E.2d 202 (2006). In that opinion, the Supreme Court stated that for the reasons in Levinson, J.'s, dissent, "there exists a genuine issue of material fact regarding plaintiff's gross negligence claim" and remanded the case to this Court. *Id.* at 146, 638 S.E.2d at 203. This opinion, which reversed this Court's opinion *per curiam*, is the one cited by plaintiff. For simplicity's sake, the citations above to the facts of the case and the reasoning of the dissent (on which the Supreme Court opinion relies) are citations to Levinson, J.'s, dissent, rather than to the Supreme Court opinion, as it does not restate this information.

forbidden to pursue, then many more suspects will flee—and successful flights not only reduce the number of crimes solved but also create their own risks for passengers and bystanders' ") (citations omitted). Moreover, the accident in this case was not caused by any action of defendant, but Terry's reckless driving and ultimate collision with the decedent.

Further, the other facts—that defendant traveled at a high rate of speed (somewhere between sixty-five m.p.h. and 106 m.p.h.) and passed multiple cars while using his blue lights and siren on a narrow two-lane road—even taken in conjunction with those facts previously stated, also do not meet the elevated gross negligence standard. The weather was clear; the road relatively straight, with only a slight bend and grade; and it was approximately 2:30-3:00 p.m. on a Sunday afternoon. Defendant was unaware of the upcoming intersection's activity, the victim's car, or the stopped line of traffic directly in front of his vehicle. This certainly does not constitute gross negligence under the standard required by the North Carolina police pursuit cases discussed above. Plaintiff's arguments to the contrary are rejected.

III.

[3] Plaintiff's final argument is that the trial court did not adequately consider any facts relating to its assertion that the Danville Police Department did not properly supervise the actions of defendant. We disagree.

Plaintiff relies for this argument on the following facts: No "timely attempt was made" to determine whether a felony hit-and-run had occurred, the senior police officer in charge failed to devote proper attention to the pursuit, and no contact was made between the City's and North Carolina's authorities. [Appellant's Memo 33-34]. Considering the brevity of the pursuit—there is no evidence, beyond plaintiff's assertions, to show that the pursuit lasted more than approximately twenty seconds in North Carolina—these allegations lend little weight to plaintiff's argument. Defendant determined, although mistakenly, that adequate cause for pursuit existed, radioed in to report his speed, and asked for permission to enter into North Carolina, followed procedure and maintained reasonable contact with dispatch. In addition, no evidence was presented that defendant's supervisors failed to follow proper procedures under the circumstances of this case. As such, this argument is without merit.

IV.

Plaintiff's claims as to reversible error by the trial court due to its granting of a motion for summary judgment and the application of the gross negligence standard are without merit. Defendant's conduct, even taken in a light most favorable to plaintiff, does not amount to gross negligence. We also reject plaintiff's arguments regarding improper supervision by the City.

Affirmed.

Judges BRYANT and JACKSON concur.