EDWARD EARL SIMMONS, Plaintiff v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Defendant

No. COA97-422

(Filed 20 January 1998)

1. **State § 35 (NCI4th)— Tort Claims action—welding DOT storage tank—inherently dangerous**

   The trial court did not err in a Tort Claims action arising from an injury to a welder working on a DOT asphalt storage tank by affirming the Industrial Commission's conclusion that negligence by defendant was the proximate cause of plaintiff's injuries. DOT owed plaintiff a duty to provide a safe work environment because plaintiff's work was inherently or intrinsically dangerous in that it could be performed safely with certain precautions, but, in the ordinary course of events, would cause injuries if those precautions were omitted. The Commission's conclusion that DOT negligently breached its duty to plaintiff was justified by findings which were supported by competent evidence.

**2. State §§ 55 (NCI4th)— explosion while welding DOT storage tank—negligence of DOT—proximate cause**

The Industrial Commission did not err in a Tort Claims action arising from an explosion which injured a welder on an asphalt storage tank by finding and concluding that a proximate cause of plaintiff's injury was the negligence of a DOT employee, although evidence existed to support another finding.

**3. State § 36 (NCI4th)— explosion while welding DOT storage tank—no contributory negligence by welder**

The North Carolina Industrial Commission did not err by concluding that plaintiff-welder was not contributorily negligent in a Tort Claims action arising from an explosion on a DOT asphalt storage tank where the Commission's conclusion was justified by findings supported by competent evidence that plaintiff used a gas detection device to check for combustible vapors or gases in and around the tank prior to the explosion even though he failed to install a required vapor seal.

Appeal by defendant from an order and award entered 9 December 1996 by the North Carolina Industrial Commission. Heard in the Court of Appeals 3 December 1997.

*Stephen E. Culbreth; and Yow, Fox & Mannen, L.L.P., by Jerry A. Mannen, Jr., for plaintiff-appellee.*

*Attorney General Michael F. Easley, by Assistant Attorney General Carol K. Barnhill, for the State.*

WALKER, Judge.

Plaintiff initiated a claim before the North Carolina Industrial Commission under N.C. Gen. Stat. § 143-291 *et seq.*, the Tort Claims Act. After a hearing, the deputy commissioner entered an order concluding that the negligence of defendant's named employee was the proximate cause of plaintiff's injuries and that plaintiff was not contributorily negligent. The parties then filed a stipulation of damages, and the deputy commissioner issued an order in which plaintiff was awarded $100,000.00 in damages. Defendant N.C. Department of Transportation (DOT) appealed to the Full Commission (Commission), which issued an order with findings, conclusions and an award consistent with those of the deputy commissioner.

The findings of the Commission tend to show that High Rise Service Company, Inc. (High Rise) is in the business of providing contract work regarding tank repairs, welding and pipe-fitting for the petroleum and chemical industry. In 1992, High Rise contracted with DOT to perform certain welding and metal fabrication work on 10,000 gallon asphalt storage tanks located at various DOT sites, including Durham, North Carolina. The purpose of this work was to fabricate the tanks to accommodate circulation equipment so that another asphalt material could be stored in the tanks.

In a letter dated 13 May 1992, Andy Simmons (Simmons), the president of High Rise, advised a representative from DOT that High Rise had devised a plan of completing the work on the tanks without the tanks having to be emptied. In order to accomplish this plan, the heating element in the tanks had to be turned off and the tanks left open for a period of time to allow the contents of the tanks to cool to the surrounding temperature. Further, Simmons stated that prior to beginning the work on the tanks, a two-step safety process would be followed, which consisted of (1) checking the tank for the presence of flammable gas with a gas detection device, and (2) sealing off the manhole inside the tank with a vapor seal.

On 18 June 1992, plaintiff was employed by High Rise as a welder. In the course of his employment, plaintiff often times encountered flammable gases and other substances. As such, plaintiff was trained to use equipment designed to detect the presence of flammable gas in or around a tank. On the date in question, plaintiff arrived at the Durham DOT site with a co-worker in order to perform the contracted work. Upon arrival, he met with H.A. Moore (Moore), the maintenance supervisor for the Durham site. At that time, Moore told plaintiff that the heating element in the tank had been turned off and the manhole to the tank had been open for at least two weeks, such that the tank was now ready to be worked on.

Prior to beginning work, plaintiff inspected the tank and determined that a three-inch overflow pipe needed to be removed in order for the vapor seal to be installed properly in the manhole. After receiving Moore's permission to remove the overflow pipe, plaintiff checked the area in and around the tank for the presence of flammable vapors or gases with a standard gas detection instrument. The gas detector was provided by High Rise and had been re-calibrated on or about 2 June 1992.

After detecting no combustible materials in or around the tank, plaintiff started an electric portaban saw to remove the overflow pipe from the tank. When plaintiff engaged the saw, a spark form the saw's armature ignited fumes in the tank, resulting in an explosion which severely burned plaintiff's upper torso.

Given these facts, the Commission made the following additional findings:

14. The Department of Transportation and its named State employee, Mr. H.A. Moore, was negligent in that he knew or should have known that the heating elements in the Durham tank had not been turned off, and the tank had not been left open for two weeks as called for in High Rise's contract. In addition, by failing to indicate to plaintiff the true temperature of the product contained in the Durham tank and by failing to indicate to plaintiff that the tank had a thermometer, these negligent acts were the proximate cause of plaintiff's injuries.

15. Plaintiff was not contributorily negligent for his injuries in that he checked for the presence of combustible gases with a gas detection device. Plaintiff was familiar with the proper use of the gas detection device, and he properly used the device on this occasion.

[1] The Tort Claims Act was enacted in order to enlarge the rights and remedies of a person who is injured by the negligence of a State employee who was acting within the course of his employment. *See Wirth v. Bracey*, 258 N.C. 505, 508, 128 S.E.2d 810, 813 (1963). Pursuant to the statute, the Commission has exclusive jurisdiction to hear claims falling under this Act. N.C. Gen. Stat. § 143-291(a) (1996).

Decisions of the Commission awarding damages to a plaintiff under the Tort Claims Act can only be appealed to this Court "for errors of law . . . under the same terms and conditions as govern appeals in ordinary civil actions, and the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them." N.C. Gen. Stat. § 143-293 (1996). This is so even if there is evidence which would support findings to the contrary. *Bailey v. Dept. of Mental Health*, 272 N.C. 680, 683-684, 159 S.E.2d 28, 30-31 (1968). Therefore, when considering an appeal from the Commission, our Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact,

and (2) whether the Commission's findings of fact justify its conclusions of law and decision. *Id.* at 684, 159 S.E.2d at 31.

Actions to recover for the negligence of a State employee under the Tort Claims Act are guided by the same principles that are applicable to other civil causes of action. *Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988). Therefore, to establish an actionable claim for negligence, plaintiff must show that (1) DOT owed plaintiff a duty of care; (2) the actions, or failure to act, by DOT's named employee breached that duty; (3) this breach was the actual and proximate cause of plaintiff's injury; and (4) plaintiff suffered damages as a result of such breach. *Id.*

With regard to the first element, since "plaintiff was on the premises by invitation and was injured while rendering a 'direct and substantial benefit' to the defendant," he was an invitee. David A. Logan and Wayne A. Logan, *North Carolina Torts* § 5.20, at 107 (1996); *see also Cook v. Morrison*, 105 N.C. App. 509, 515, 413 S.E.2d 922, 925 (1992). As such, the applicable duty of care owed by DOT to plaintiff was "to exercise ordinary care to keep the premises in a reasonably safe condition so as not to expose him unnecessarily to danger, and to give warning of hidden conditions and dangers of which . . . [it] had express or implied knowledge." *Cook v. Morrison*, 105 N.C. App. at 515, 413 S.E.2d at 925 *(quoting Southern Railway Co. v. ADM Milling Co.*, 58 N.C. App. 667, 673, 294 S.E.2d 750, 755, *disc. review denied*, 307 N.C. 270, 299 S.E.2d 215 (1982)).

However, this duty of care does not apply to the actual work undertaken by plaintiff, unless the activity is an inherently or intrinsically dangerous activity. *Id.* Therefore, since High Rise contracted with DOT to perform work on the storage tank, and plaintiff was injured while performing such work, DOT did not owe a duty to plaintiff unless the work plaintiff was engaged in can properly be characterized as inherently or intrinsically dangerous.

Whether an activity is inherently or intrinsically dangerous is a question of law. *Deitz v. Jackson*, 57 N.C. App. 275, 280, 291 S.E.2d 282, 286 (1982). Although no bright line has been drawn by our courts as to what constitutes an inherently or intrinsically dangerous activity, it is generally understood that an activity will be characterized as such if it can be performed safely provided certain precautions are taken, but will, in the ordinary course of events, cause injury to others if these precautions are omitted. *See Evans v. Rockingham Homes, Inc.*, 220 N.C. 253, 17 S.E.2d 125 (1941) (Where the court held

that "[t]his rule is sufficiently comprehensive to embrace, not only work which, from its description[], is 'inherently' or 'intrinsically dangerous,' but also work which will, in the ordinary course of events, occasion injury to others if certain precautions are omitted, but which may, as a general rule, be executed with safety if those precautions are adopted." *Id.* at 258, 17 S.E.2d at 128).

Further, if the activity is inherently or intrinsically dangerous and the employer knows or should know of the circumstances creating the danger, then the employer has a nondelegable duty to the independent contractor's employees "to exercise due care to see that . . . [these employees are] provided a safe place in which to work and proper safeguards against any dangers as might be incident to the work [are taken]." *Cook v. Morrison*, 105 N.C. App. at 516, 413 S.E.2d at 926 (*quoting Woodson v. Rowland*, 329 N.C. 330, 357, 407 S.E.2d 222, 238 (1991)). This liability exists to enforce the public policy that the employer should not be allowed to escape liability for injuries resulting from the performance of this type of activity simply by entrusting the duty of such performance with an independent contractor. *Evans v. Rockingham Homes, Inc.*, 220 N.C. at 259, 17 S.E.2d at 128-129.

Here, the Commission's findings establish that DOT contracted with High Rise to perform certain work on an asphalt storage tank which contained a flammable product. To perform such work, the heating element for the storage tank was required to be turned off, and the manhole to the tank was required to remain open for a period of time in order for the contents of the tank to cool to the surrounding temperature such that the risk of the contents igniting would be reduced. High Rise's safety procedures required plaintiff to check the area in and around the tank for the presence of flammable vapors or gases with a gas detection device and seal the manhole to the tank prior to beginning such work. These facts indicate that the work plaintiff was to perform on DOT's premises was inherently or intrinsically dangerous, in that it could be performed in a safe manner provided certain precautions were taken, but if such precautions were not followed, injury may result to others. Therefore, DOT did owe plaintiff a duty to exercise reasonable care in providing plaintiff with a safe work environment.

However, in order to establish that DOT was negligent, plaintiff must also show that DOT breached this duty. The Commission found that DOT breached its duty in that DOT's employee, Moore, (1) knew or should have known that the heating element in the Durham tank

had not been turned off, and the manhole had not been left open for two weeks to allow the contents to cool to the surrounding temperature; (2) failed to indicate to plaintiff the true temperature of the product in the tank; and (3) failed to indicate to plaintiff that the tank had a thermometer from which plaintiff could determine the true temperature of the product in the tank. After a careful review, we find that the Commission's findings are supported by competent evidence and justify its conclusion that DOT negligently breached its duty to plaintiff of providing a safe workplace and enacting proper safeguards against dangers incident to plaintiff's work.

[2] Next, in order to recover under the Tort Claims Act, plaintiff must further establish that Moore's breach of duty was the actual and proximate cause of plaintiff's injuries. *Register v. Administrative Office of the Courts*, 70 N.C. App. 763, 766, 321 S.E.2d 24, 27 (1984). In addressing this issue, our Court has stated:

> Proximate cause is a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed. Foreseeability is thus a requisite of proximate cause, which is, in turn, a requisite for actionable negligence.

*Westbrook v. Cobb*, 105 N.C. App. 64, 67, 411 S.E.2d 651, 653 (1992) (citation omitted). However, Moore's negligence need not be the *sole proximate cause* of plaintiff's injury, so long as his negligence was *one of the proximate causes* of the injury. *Trust Co. v. Board of Education*, 251 N.C. 603, 609, 111 S.E.2d 844, 849 (1960).

Upon review, we find that although evidence exists that may support a contrary finding, the Commission's findings are supported by competent evidence and justify its conclusion that Moore's negligence was a proximate cause of plaintiff's injury.

Therefore, plaintiff has established a *prima facie* case of negligence, and the Commission did not err by making findings and conclusions as such.

[3] DOT's final contention is that regardless of whether it was negligent in causing plaintiff's injuries, plaintiff is absolutely barred from recovering due to his contributory negligence.

The Tort Claims Act provides that:

Contributory negligence on the part of the claimant . . . shall be deemed to be a matter of defense on the part of the State department, institution or agency against which the claim is asserted, and such State department, institution or agency shall have the burden of proving that the claimant . . . was guilty of contributory negligence.

N.C. Gen. Stat. § 143-299.1 (1996). Further, our Supreme Court has held that "[w]hile inferences may be drawn by the Commission from facts leading reasonably thereto, a conclusion of . . . contributory negligence may not be drawn in favor of the party having the burden of proof upon no basis other than speculation and unproved possibilities." *Barney v. Highway Comm.*, 282 N.C. 278, 285, 192 S.E.2d 273, 277 (1972).

The State contends that plaintiff's failure to install a vapor seal on the manhole prior to beginning his work was the proximate cause of his injury; therefore, plaintiff was contributorily negligent as a matter of law. However, the Commission found that plaintiff was not contributorily negligent in that prior to beginning work, plaintiff properly used a gas detection device to check for the presence of combustible vapors or gases in and around the tank.

We find that the Commission's findings are supported by competent evidence and justify its conclusion that plaintiff was not contributorily negligent. Therefore, the decision and order of the Commission is affirmed.

Affirmed.

Judges LEWIS and TIMMONS-GOODSON concur.