TINYA CHERNEY, PLAINTIFF v. NORTH CAROLINA ZOOLOGICAL PARK, DEFENDANT

No. COA06-1060

(Filed 7 August 2007)

**1. Tort Claims Act— second opinion—writ of mandamus**

   The Industrial Commission's second decision and order denying plaintiff's claim for personal injuries under the Tort Claims Act was not improper even though plaintiff contends our Supreme Court ruled in her favor in 2005 and allowed her petition

for writ of mandamus in 2006, because: (1) at the time plaintiff submitted her brief to the Court of Appeals on 20 November 2006, plaintiff's writ of mandamus remained pending before our Supreme Court; and (2) on 14 December 2006, our Supreme Court denied plaintiff's petition for writ of mandamus and stated the mandate of its 5 May 2005 per curiam opinion was satisfied by the Commission's issuance of its new decision and order on 28 April 2006.

## 2. Premises Liability— duty of care—warning of hidden dangers

The Industrial Commission did not fail to apply a premises liability legal standard in an action seeking to recover damages for personal injuries under the Tort Claims Act based upon defendant State Zoo's alleged negligence in monitoring a ficus tree, because: (1) the duty to exercise reasonable care requires that the landowner not unnecessarily expose a lawful visitor to danger and give warning of hidden hazards of which the landowner has express or implied knowledge; and (2) plaintiff admits defendant's personnel at all times adequately cared for, monitored and managed the ficus, and met the applicable standard of care for doing so.

## 3. Tort Claims Act— premises liability—findings of fact—sufficiency of evidence

In a case under the Tort Claims Act in which the Industrial Commission denied plaintiff's claim for injuries received from a falling ficus tree at the State Zoo, the evidence supported findings by the Commission that cables supporting the tree were checked the day before the accident and no problems were recorded; the Zoo staff lacked sufficient notice that the ficus tree could present a hazard to the public; on the day of the accident the tree looked healthy and free from decay; there were no indications that the tree was diseased or under stress; and the tree had stood for more than ten years under the protocols then in effect.

Judge WYNN concurring in part and dissenting in part.

Appeal by plaintiff from decision and order entered 28 April 2006 by Commissioner Dianne C. Sellers for the North Carolina Industrial Commission. Heard in the Court of Appeals 22 May 2007.

*Knott, Clark & Berger, L.L.P., by Michael W. Clark, Kenneth R. Murphy, III, and Joe Thomas Knott, III, for plaintiff-appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General William H. Borden, for defendant-appellee.*

TYSON, Judge.

Tinya Cherney ("plaintiff") appeals from the North Carolina Industrial Commission's ("the Commission") decision and order entered 28 April 2006, which denied her claim for damages from the North Carolina Zoological Park ("defendant"). We affirm.

## I. Background

Plaintiff's claim for damages is before this Court for a second time. On 7 September 1999, plaintiff filed a claim to recover damages for personal injuries against defendant pursuant to the Tort Claims Act, N.C. Gen. Stat. § 143-291, *et seq.* Plaintiff's affidavit alleged:

That the injury or property damage occurred in the following manner: [Plaintiff] was in the enclosed African Pavilion near the center when a large ficus tree fell hitting a palm tree. Both trees then fell on her pinning her to the floor of the walkway in the African Pavilion. The impact caused vertigo, broke her right femur, cracked three ribs, caused compression fractures to three vertebra (sic) and wrenched her knee. The injury occurred because the ficus tree which was indoors had been permitted to grow too large for its roots or alternatively had not been properly maintained to prevent it from becoming unsafe. The ficus tree was under the exclusive control of [defendant's] personnel and not subject to wind or any other natural force.

On 21 December 1999, defendant filed an answer denying plaintiff's allegations.

On 13 August 2001, Deputy Commissioner, Richard B. Ford, heard arguments and received evidence from both parties. On 30 October 2001, Deputy Commissioner Ford ordered defendant to pay plaintiff $500,000.00 in compensatory damages. Defendant appealed to the Full Commission.

On 29 April 2002, the matter came before the Full Commission for hearing. On 28 July 2003, a majority of the Commission reversed Deputy Commissioner Ford's recommended opinion and award and

denied plaintiff's claim. Commissioner Bernadine S. Ballance dissented from the Commission's decision and order.

Plaintiff appealed to this Court. On 14 September 2004, the matter was initially heard before this Court. On 2 November 2004, a divided panel of this Court affirmed the Commission's decision and order denying plaintiff's claim. *See Cherney v. N.C. Zoological Park,* 166 N.C. App. 684, 603 S.E.2d 842 (2004) (Timmons-Goodson, J., dissenting). Plaintiff appealed to our Supreme Court, and on 5 May 2005, the Court reversed for the reasons stated in Judge Timmon-Goodson's dissenting opinion in a *per curiam* opinion. *See Cherney v. N.C. Zoological Park,* 359 N.C. 419, 613 S.E.2d 498 (2005).

On 12 October 2005, plaintiff filed a motion for entry of award with the Commission. On 28 November 2005, defendant filed a response to plaintiff's motion with the Commission. On 28 April 2006, the Commission entered a second decision and order denying plaintiff's claim. The Commission entered its decision and order without further hearing on the matter or action by either party. Commissioner Ballance again dissented from the Commission's decision and order. Plaintiff appeals.

## II. Issues

Plaintiff argues: (1) the Commission's second decision and order giving rise to this appeal should be deemed moot or improper; (2) the Commission erred by failing to apply a premises-liability legal standard to defendant's negligence; and (3) the Commission's findings of fact are not supported by the evidence.

## III. Standard of Review

This Court has stated:

Pursuant to [N.C. Gen. Stat. § 143-291(a)], the Commission has exclusive jurisdiction to hear claims falling under [The Tort Claims] Act.

Decisions of the Commission . . . under the Tort Claims Act can only be appealed to this Court for errors of law . . . under the same terms and conditions as govern appeals in ordinary civil actions, and *the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them.* This is so even if there is evidence which would support findings to the contrary. Therefore, when considering an appeal from the Commission, our Court is limited to two questions: (1) whether

competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision.

*Simmons v. North Carolina DOT*, 128 N.C. App. 402, 405-06, 496 S.E.2d 790, 793 (1998) (emphasis supplied) (internal citations and quotation omitted).

## IV. The Commission's Second Decision and Order

[1] Plaintiff argues the Commission's second decision and order is improper because our Supreme Court ruled in her favor in 2005 and allowed her Petition for Writ of Mandamus in 2006. We disagree.

On 8 May 2006, plaintiff filed a Petition for Writ of Mandamus with our Supreme Court seeking to end all litigation in this matter and to require defendant to pay the damages awarded to her by Deputy Commissioner Ford on 30 October 2001. At the time plaintiff submitted her brief to this Court on 20 November 2006, plaintiff's Writ of Mandamus remained pending before our Supreme Court.

On 14 December 2006, our Supreme Court denied plaintiff's Petition for Writ of Mandamus and stated, "the mandate of this Court's 5 May 2005 *per curiam* opinion was satisfied by the [Commission's] issuance of its new Decision and Order on 28 April 2006." *Cherney v. N.C. Zoological Park*, 361 N.C. 147, 633 S.E.2d 677 (2006). This assignment of error is overruled.

## V. Legal Standard

[2] Plaintiff argues the Commission erred by failing to apply a premises-liability legal standard to plaintiff's negligence claim. Plaintiff asserts the issue was not whether defendant's staff reasonably monitored or otherwise cared for the ficus, but whether defendant's staff failed to correct or warn its visitors of the known hidden hazard posed by the ficus. Plaintiff contends the Commission failed to address defendant's legal duty to warn her of the known hidden danger of the tree. We disagree.

N.C. Gen. Stat. § 143-291(a) states:

The Industrial Commission shall determine whether or not each individual claim arose as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North

Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina.

Our Supreme Court has stated:

Under the [Tort Claims] Act, *negligence is determined by the same rules as those applicable to private parties.*

To establish actionable negligence, plaintiff must show that: (1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury.

*Bolkhir v. North Carolina State Univ.,* 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988) (emphasis supplied).

Our Supreme Court eliminated the distinctions between licensees and invitees in premises-liability cases and stated:

[T]his Court concludes that we should eliminate the distinction between licensees and invitees by requiring a standard of reasonable care toward all lawful visitors. Adoption of a true negligence standard eliminates the complex, confusing, and unpredictable state of premises-liability law and replaces it with a rule which focuses the jury's attention upon the pertinent issue of *whether the landowner acted as a reasonable person would under the circumstances.*

In so holding, we note that *we do not hold that owners and occupiers of land are now insurers of their premises.* Moreover, we do not intend for owners and occupiers of land to undergo unwarranted burdens in maintaining their premises. Rather, *we impose upon them only the duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors.*

*Nelson v. Freeland,* 349 N.C. 615, 631-32, 507 S.E.2d 882, 892 (1998) (Wynn, J.) (emphasis supplied).

Following *Nelson,* this Court stated the duty to exercise reasonable care "requires that the landowner not unnecessarily expose a lawful visitor to danger and give warning of hidden hazards of which the landowner has express or implied knowledge." *Bolick v. Bon Worth, Inc.,* 150 N.C. App. 428, 430, 562 S.E.2d 602, 604, *disc. rev. denied,* 356 N.C. 297, 570 S.E.2d 498 (2002).

**CHERNEY v. N.C. ZOOLOGICAL PARK**

[185 N.C. App. 203 (2007)]

Upon remand, the Commission concluded as a matter of law:

5. The greater weight of the evidence shows that Ms. Wall's practices and management of her staff in the care of the *ficus benjamina* were reasonable and met or exceeded the standards for monitoring, record keeping, pruning, watering, fertilizing, cabling, syringing and soil mixture in her field. Plaintiff has failed to prove that either of the named employees of defendant, Ron Ferguson and Virginia Wall or the staff at the North Carolina Zoo breached any applicable standard of care. *The greater weight of the evidence shows that the actions of the staff at the North Carolina Zoo in following the standards and practices of Ms. Wall in the care of the ficus benjamina were reasonable and met or exceeded the standards of the field, including the monitoring, record keeping, pruning, watering, fertilizing, cabling, syringing and mixing of the soil.* Therefore, plaintiff has failed to prove negligence and is not entitled to recovery.

(Emphasis supplied).

The Commission also found as fact:

18. *The greater weight of the evidence indicates that neither Ms. Wall nor her staff knew or should have known that the ficus tree was likely to fall.* There is no showing that Ms. Wall violated any applicable standard of care in her management of the horticulture department and supervision of the horticulture staff. There is no showing that any member of Ms. Wall's staff violated any applicable standard of care in the completion of their duties regarding the care of the *ficus*.

(Emphasis supplied).

Plaintiff admits "defendant's personnel at all times adequately cared for, monitored and managed the Ficus, and met the applicable 'standard of care' for doing so." Plaintiff only argues the Commission applied the wrong legal standard because it failed to address defendant's legal duty to warn her of the known hidden danger of the ficus. Finding of fact numbered 18 is unchallenged, binding, and clearly shows the Commission properly applied the legal standards from both *Nelson* and *Bolick*. *Id*. This assignment of error is overruled.

## VI. Findings of Fact

[3] Plaintiff argues the Commission's findings of fact are not supported and must be set aside because all of the evidence leads

to the conclusion defendant's negligence was the proximate cause of her injuries. Plaintiff asserts the unequivocal and uncontroverted evidence is that defendant had notice of a potentially dangerous condition on its premises and failed to correct or warn its visitors. We disagree.

"[T]he scope of review on appeal is limited to those issues presented by assignment of error in the record on appeal." *Koufman v. Koufman*, 330 N.C. 93, 98, 408 S.E.2d 729, 731 (1991). This Court has stated:

> Where findings of fact are challenged on appeal, *each contested finding of fact must be separately assigned as error*, and the failure to do so results in a waiver of the right to challenge the sufficiency of the evidence to support the finding. *Taylor v. N.C. Dept. of Transportation*, 86 N.C. App. 299, 357 S.E.2d 439 (1987); *Concrete Service Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 684, 340 S.E.2d 755, 759-60, *cert. denied*, 317 N.C. 333, 346 S.E.2d 137 (1986) (finding that the failure of appellant to "except and assign error separately to each finding or conclusion that he or she contends is not supported by the evidence . . . will result in waiver of the right to challenge the sufficiency of the evidence to support particular findings of fact").

*Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 591, 525 S.E.2d 481, 484 (2000) (emphasis supplied). "Where no exception is taken to a finding of fact . . . , the finding is presumed to be supported by competent evidence and is binding on appeal." *Koufman v. Koufman*, 330 N.C. at 97, 408 S.E.2d at 731.

As noted, "[T]he findings of fact of the Commission shall be conclusive if there is any competent evidence to support them. This is so even if there is evidence which would support findings to the contrary." *Simmons*, 128 N.C. App. at 405, 496 S.E.2d at 793.

Here, plaintiff has separately and specifically assigned error to only two of the Commission's findings of fact and argues they are not supported by any competent evidence:

> 7.  The last recorded check on cables on the *ficus* tree were made by experienced staff members on Friday, July 17, 1998. No problems were recorded. Ms. Wall learned from a staff member after the incident involving plaintiff that one of the cables was a little bit loose, but the degree of looseness was so minor as to not war-

rant recordation, therefore there was not sufficient notice to the staff that the *ficus benjamina* could present a hazard to the public and it was not unreasonable to wait until Monday for the pruning given the circumstances.

. . . .

11. On July 18, 1998, the multiple stemmed *ficus* tree appeared healthy and free from decay. There were no indications that the tree was diseased or under stress. It did not appear to be hazardous and had stood for more than ten years under the protocols then in effect.

Plaintiff was injured when a ficus tree fell on 18 July 1998 in defendant's indoor African Pavilion. Virginia Wall ("Wall"), defendant's curator of horticulture, testified six "three-eighths-inch aircraft cable[s] . . . bolt[ed] into the concrete" were used to aid the tree in staying upright. It was "protocol" for staff to inspect the cables monthly for slack, tension, deterioration, and rust. The cables were replaced and repaired at times. The monthly checks on the cables were not routinely recorded, unless staff members discovered what appeared to be a problem.

Wall testified she expected to be notified by staff if there "was a large scale problem" or "a problem they perceived as being dangerous." The cables were checked on 17 July 1998, the day before the accident. No problems were noted by defendant's staff. Defendant's records stated, "7/17/98 all cables checked. No problems noted." Wall was informed by a staff member after the accident one of the cables was "a little bit loose." Wall testified:

I have no record of loose cables other than the incident report, and that was after the fact. In my opinion, reading old logs—if [the staff] felt it was a slack cable, they would have noted that in the daily logs, and they did not. *So it didn't even come up on their radar that it was a problem.*

(Emphasis supplied).

The tree was scheduled for regular "summer pruning" on 20 July 1998. The tree had previously been pruned in January 1998. Wall testified: (1) the top growth on the tree was not an abnormal amount; (2) the amount of top growth "was typical for right before pruning"; and (3) she had no reason to think the tree was going to fall at this particular time.

Competent evidence in the record also shows: (1) on 18 July 1998, the tree appeared healthy and free from decay; (2) the tree did not appear to be a problem and had stood for more than ten years with the maintenance protocols in effect; (3) the cause of the tree's fall is unknown; and (4) the tree falling was "unforeseeable, unpreventable, and extremely rare."

The Commission's findings of fact are supported by competent evidence in the record and are "conclusive" on appeal. *Simmons*, 128 N.C. App. at 405, 496 S.E.2d at 793. These findings of fact support the Commission's conclusions of law denying plaintiff's claims for damages. This assignment of error is overruled.

## VII.  Conclusion

The Commission's decision and order entered 28 April 2006 is properly before us. Our Supreme Court denied plaintiff's Petition for Writ of Mandamus and stated, "the mandate of this Court's 5 May 2005 *per curiam* opinion was satisfied by the [Commission's] issuance of its new Decision and Order on 28 April 2006." *Cherney*, 361 N.C. at 147, 633 S.E.2d at 677.

The Commission applied the proper premises-liability legal standard to plaintiff's negligence claim, as shown in finding of fact numbered 18 and conclusion of law numbered 5. The findings of fact to which plaintiff assigned error and argued are supported by competent evidence. These findings of fact support the Commission's conclusion of law denying plaintiff's claim for damages. The Commission's decision and order is affirmed.

Affirmed.

Judge CALABRIA concurs.

Judge WYNN concurs in part and dissents in part by separate opinion.

WYNN, Judge, concurring in part and dissenting in part.

I concur with that portion of the majority's opinion that finds that the Full Commission's second Opinion and Award in this case is not moot, and that this appeal is therefore proper. However, because I find that the Full Commission erred as a matter of law in its application of premises liability to the facts at hand, I would reverse and

remand the Opinion and Award for further consideration. I therefore respectfully dissent.

The majority points to the Full Commission's finding that "[t]he greater weight of the evidence indicates that neither Ms. Wall nor her staff knew or should have known that the ficus tree was likely to fall[,]" and the conclusion that the North Carolina Zoo staff met or exceeded the standards of the field in monitoring and tending to the ficus tree, to conclude that the Full Commission properly applied the standard for premises liability. I disagree.

As recognized by the majority, the Tort Claims Act waives governmental immunity for certain acts of negligence by state employees, with "such negligence . . . determined by the same rules as those applicable to private parties." *Bolkhir v. North Carolina State Univ.*, 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988); *see also* N.C. Gen. Stat. § 143-291 (2005). Negligence must be shown by proving that a defendant state employee or agency "failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances," as well as that the breach of duty was the proximate cause of the injury. *Bolkhir*, 321 N.C. at 709, 365 S.E.2d at 900.

In a premises liability case, the duty to exercise reasonable care "requires that the landowner not necessarily expose a lawful visitor to danger and give warning of hidden hazards of which the landowner has express or implied knowledge." *Bolick v. Bon Worth, Inc.*, 150 N.C. App. 428, 430, 562 S.E.2d 602, 604, *disc. review denied*, 356 N.C. 297, 570 S.E.2d 498 (2002). Thus, where in a negligence action a plaintiff must show that the defendant had a duty to the plaintiff and that the defendant breached that duty, thereby causing the plaintiff's injuries, *see Lavelle v. Schultz*, 120 N.C. App. 857, 859-60, 463 S.E.2d 567, 569 (1995) (citation omitted), *disc. review denied*, 342 N.C. 656, 467 S.E.2d 715 (1996), a plaintiff in a premises liability action must show that the defendant owed her a duty, and that the defendant breached that duty by unnecessarily exposing her to danger and failing to warn her of "hidden hazards of which the landowner has express or implied knowledge[,]" thereby causing her injuries. *Bolick*, 150 N.C. App. at 430, 562 S.E.2d at 604; *see also Nelson v. Freeland*, 349 N.C. 615, 632, 507 S.E.2d 882, 892 (1998), *reh'g denied*, 350 N.C. 108, 533 S.E.2d 467 (1999); *Grayson v. High Point Development Ltd. Partnership*, 175 N.C. App. 786, 788-89, 625 S.E.2d 591, 593, *disc. review denied*, 360 N.C. 533, 633 S.E.2d 681 (2006). The reasonableness of a defendant's exercise of care "must be judged against the

conduct of a reasonably prudent person under the circumstances." *Lorinovich v. K-Mart Corp.*, 134 N.C. App. 158, 161, 516 S.E.2d 643, 646, *cert. denied*, 351 N.C. 107, 541 S.E.2d 148 (1999).

Here, there is no dispute that the North Carolina Zoo owed Ms. Cherney a duty of reasonable care, *see Nelson*, 349 N.C. at 631, 507 S.E.2d at 892 ("[W]e impose upon [owners and occupiers of land] only the duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors."), nor that the falling of a ficus tree in the exclusive control of the Zoo caused her injuries. The question of liability in this case instead turns on whether the Zoo breached its duty of reasonable care to Ms. Cherney by exposing her to danger unnecessarily and failing to warn of the hidden hazard of the ficus tree—provided that the Zoo and its employees had either express or implied knowledge that the tree was, in fact, in danger of falling. *See Bolick*, 150 N.C. App. at 430, 562 S.E.2d at 604.

Although the Full Commission found that "[t]he greater weight of the evidence indicates that neither Ms. Wall nor her staff knew or should have known that the ficus tree was likely to fall[,]" the record contains evidence not only to the contrary, but indeed, I believe such a finding is completely inconsistent with the evidence presented to the Full Commission. *See Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) ("[T]he findings of fact of the Industrial Commission are conclusive on appeal when supported by competent evidence, even though there be evidence that would support findings to the contrary." (citation and quotation omitted)), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999); *Rhodes v. Price Bros., Inc.*, 175 N.C. App. 219, 221, 622 S.E.2d 710, 712 (2005) (findings of fact may be set aside on appeal only "when there is a complete lack of competent evidence to support them" (quotation omitted)).

At the time the ficus tree fell the first time, in 1988, it was between eighteen and twenty feet tall, with a more compact root ball; when it fell on Ms. Cherney, it was approximately thirty-four feet tall. As found by the Full Commission, after it fell the first time, the tree was "replanted, and six, seven-strand 3/8" cables going in four directions were looped around the tree and attached to the planter walls." The purpose of the cables was "to aid the tree in keeping it upright and to assist in monitoring the tree." Additionally, the Full Commission found as fact that the "cables on the tree were thereafter checked monthly for slack, tension and deterioration" by the Zoo staff, as well as "given a daily visual inspection for general health,

appearance, and special problems[.]" Two of the four cables had snapped when the tree fell on Ms. Cherney.

The very fact that the tree was cabled to the planter walls illustrates that the Zoo and its employees had "express or implied knowledge" that the tree might fall; if there had been no danger, then the tree would not have needed to be cabled in such a fashion, nor would the Zoo employees have needed to monitor it so closely. Moreover, the Full Commission itself stated that the cables were "used to aid the tree in keeping it upright," suggesting that there was an implied recognition that the tree might again fall. In light of these actions, as well as the fact that the tree was in a shallow concrete planter, growing bigger by the year, and had previously fallen, the testimony by the Zoo employees that they had no knowledge that the tree might fall is simply not competent evidence. The question is not whether the tree was *likely* to fall, as addressed by the Full Commission in the finding of fact quoted by the majority opinion. Rather, the issue is whether a Zoo visitor such as Ms. Cherney—or one of the tens of thousands of schoolchildren who pass through the African Pavilion each year—was unnecessarily exposed to danger and was not warned of a hidden hazard.

Given that the Zoo staff was aware of the danger of the tree falling, both through the previous incident and its ongoing monitoring and cabling of the tree, I would conclude that the Zoo had a duty to warn Ms. Cherney and other Zoo visitors of the possibility that the tree might fall. The Full Commission made no finding as to any warning sign posted by the Zoo or other indication that the tree was a hidden hazard, and the record contains no reference to such a warning. The Zoo staff could also have moved the tree to a different location, where it would not have injured visitors even if it fell, or could have pruned it back even further to ensure that it was not outgrowing its planter.

Hundreds of thousands of people visit the North Carolina Zoo each year; it is one of our State's most popular and well-maintained attractions. However, in light of the knowledge of Zoo staff as to the possible danger posed to the public of the ficus tree in question, I believe the Zoo employees failed to exercise the care of a reasonably prudent person under the circumstances by failing to warn of the hidden hazard here.

Because the Full Commission made findings contrary to logic and unsupported by competent evidence, I believe the Full Commis-

sion erred as a matter of law in its application of the premises liability negligence standard. I would therefore reverse and remand for additional consideration.