CHARLES ROGER HOLLOWAY, Executor of the Estate of LOIS RAPER HOLLOWAY, Deceased, Plaintiff v. N.C. DEPARTMENT OF CRIME CONTROL & PUBLIC SAFETY/N.C. HIGHWAY PATROL, Defendant

DENNIS EDGAR BORING and JUDITH BORING BODNAR, Co-Administrators of the Estate of BLANCHE RAPER BORING, Deceased, and JUDITH BORING BODNAR, Individually, Plaintiffs v. N.C. DEPARTMENT OF CRIME CONTROL & PUBLIC SAFETY/N.C. HIGHWAY PATROL, Defendant

No. COA08-802

(Filed 19 May 2009)

**1. Tort Claims Act— negligence—sufficiency of finding of fact—accident reconstruction**

The Industrial Commission did not err in a negligence case under the Tort Claims Act by its finding of fact number 14 even though plaintiffs contend their accident reconstruction expert never stated the highway patrol trooper should have swerved into

oncoming traffic because: (1) contrary to plaintiff's characterization of the finding, the full Commission did not find the expert suggested the trooper should have swerved into oncoming traffic, but instead found the expert suggested the trooper should have considered swerving left instead; (2) another trooper testified that going right was the pertinent trooper's only option; and (3) the finding was supported by competent evidence.

**2. Tort Claims Act— gross negligence—sufficiency of finding of fact—conclusion of law—accident reconstruction**

The Industrial Commission did not err in a negligence case under the Tort Claims Act by its findings of fact numbers 7, 16, and 18, and conclusion of law number 2, because: (1) rather than attempting to show that these findings are unsupported by evidence, plaintiffs attempted to relitigate the case on appeal by highlighting evidence contrary to these findings, and the Court of Appeals is bound by these findings if they are supported by any competent evidence even if contrary evidence appears; (2) in an unchallenged finding of fact, the full Commission found that by steering to the right the trooper did the right thing; (3) another trooper who created an accident reconstruction report opined that swerving right was the pertinent trooper's only option, and the full Commission gave greater weight to the testimony of the trooper than plaintiff's accident reconstruction expert; (4) these findings of fact supported conclusion of law 2, and further the conclusion comported with precedent established by our appellate courts; (5) the trooper's actions did not rise to the level of gross negligence or wanton conduct done with conscious or reckless disregard for the rights and safety of others; and (6) the full Commission found that decedent's car was at a complete stop and that it was reasonable for the trooper to assume the car would wait for the vehicles with the right-of-way to pass the median crossover before turning across the highway, and the trooper's immediate evasive action was the only option available to him under the circumstances.

Appeal by plaintiffs from an opinion and award of the Full Commission of the North Carolina Industrial Commission entered 8 May 2008 by Commissioner Buck Lattimore. Heard in the Court of Appeals 10 December 2008.

*Cahoon & Swisher, North, Cooke & Landreth, by A. Wayland Cooke and H. Davis North, III, for plaintiffs-appellants.*

*Roberts & Stevens, P.A., by Wyatt S. Stevens and Ann-Patton Nelson; and Attorney General Roy A. Cooper, III, by Assistant Attorney General Donna Wojcik, for defendant-appellee.*

JACKSON, Judge.

Charles Holloway, Dennis Boring, and Judith Bodnar (collectively, "plaintiffs") appeal from a decision and order of the Full Commission of the North Carolina Industrial Commission ("Full Commission") denying plaintiffs' negligence claim against the North Carolina Department of Crime Control and Public Safety, Division of State Highway Patrol ("defendant"). For the reasons set forth below, we affirm.

On 17 July 2003, at approximately 3:00 p.m., Trooper Kenneth Hyde ("Trooper Hyde") was driving westbound on U.S. 19/74[1] when he observed a black BMW speeding eastbound at seventy-six miles per hour in a fifty-five mile per hour zone. Trooper Hyde activated his emergency lights and siren and turned across the grass median to initiate a traffic stop in the eastbound lane.

In an effort to evade Trooper Hyde, the black BMW crossed over the grass median to head west. Trooper Hyde followed by crossing the grass median to pursue the westbound BMW. Trooper Hyde alerted Cherokee County Deputy Mashburn ("Deputy Mashburn"), who was stationary just ahead. As the BMW approached Deputy Mashburn, the BMW crossed the median once more—now heading eastbound. Trooper Hyde and Deputy Mashburn gave chase across the median again. Trooper Hyde then notified the State Highway Patrol center in Asheville of the pursuit.

The State Highway Patrol center sent out an alert about the chase. Trooper Jeremy Ledford ("Trooper Ledford") was located at the Peachtree patrol station and responded to the alert. Trooper Hal Robertson ("Trooper Robertson") was off-duty, but joined Trooper Ledford in Ledford's patrol car, a loaned, "spare" patrol vehicle—a retired 1999 Crown Victoria with approximately 89,000 miles on it. Trooper Ledford immediately activated his siren and blue lights, and he proceeded toward the chase in "emergency response" mode.

---

1. U.S. 19/74 is a four-lane paved highway that runs between the towns of Andrews and Murphy, North Carolina. The highway is divided by a grass median with several crossovers.

Trooper Ledford testified that the traffic conditions were "very light," and the weather was clear on U.S. 19/74 on 17 July 2003. He was unsure how fast he traveled along U.S. 19/74 in order to respond to the chase, but testified that it is possible that he drove in excess of 100 miles per hour. However, he estimated that he did not travel "much over a hundred." The posted speed limit on U.S. 19/74 is fifty-five miles per hour.

During the pursuit, Trooper Ledford passed two vehicles and then crested a hill. From the crest of the hill, the road continues straight ahead, but slopes downhill. Approximately 900 feet from the crest of the hill, a road leading to a landfill intersects with eastbound U.S. 19/74 on the right. As Trooper Ledford started down the hill, he passed a white Honda and then saw two vehicles in front of him occupying both of the eastbound lanes of travel. Trooper Ledford eased off of his accelerator to slow down and to allow the vehicles in front of him to see him and move over.

As Trooper Ledford continued down the hill, he noticed a white Chevrolet Lumina on westbound U.S. 19/74. Blanche Boring ("Boring") was driving the Lumina and was accompanied by her sister, Lois Holloway ("Holloway") (collectively, "decedents"). Boring pulled into the median crossover as if she intended to turn into the landfill road across from the eastbound lanes of U.S. 19/74. This section of U.S. 19/74—the median crossover and landfill road intersection—is not regulated by traffic lights or signs. Trooper Ledford observed the Lumina come to a complete stop in the crossover, and he assumed that Boring could see him and the other vehicles approaching the median crossover and landfill road intersection. The two vehicles in front of Trooper Ledford passed the median crossover and landfill road intersection, and then Boring pulled out in front of Trooper Ledford. Trooper Ledford took a hard, evasive turn to the right in an attempt to avoid a collision. Boring continued forward, however, and Trooper Ledford collided with the Lumina, killing decedents.

On 12 February 2004, plaintiffs filed claims against defendant for damages pursuant to the North Carolina Tort Claims Act. On 29 and 30 May 2007, Deputy Commissioner Glenn heard the consolidated claims. On 13 August 2007, Deputy Commissioner Glenn filed amended decisions and orders concluding that Trooper Ledford was grossly negligent and awarding damages to plaintiffs. Defendant appealed Deputy Commissioner Glenn's decisions and orders to the Full Commission. On 12 February 2008, the Full Commission heard

the matter, and by opinion and award filed 8 May 2008, the Full Commission reversed Deputy Commissioner Glenn's decisions and orders. Plaintiffs appeal.

Our review of decisions and orders from the Full Commission "is limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision." *Simmons v. N.C. Dept. of Transportation*, 128 N.C. App. 402, 405-06, 496 S.E.2d 790, 793 (1998) (citing *Bailey v. Dept. of Mental Health*, 272 N.C. 680, 684, 159 S.E.2d 28, 31 (1968)). Pursuant to the North Carolina Tort Claims Act, "the findings of fact of the Commission shall be conclusive if there is *any* competent evidence to support them." N.C. Gen. Stat. § 143-293 (2007) (emphasis added). "This is so even if there is evidence which would support findings to the contrary." *Simmons*, 128 N.C. App. at 405, 496 S.E.2d at 793 (citing *Bailey v. Dept. of Mental Health*, 272 N.C. 680, 683-84, 159 S.E.2d 28, 30-31 (1968)). We review the Full Commission's conclusions of law *de novo*. *Gratz v. Hill*, 189 N.C. App. 489, 492, 658 S.E.2d 523, 525 (2008) (citing *Griggs v. Eastern Omni Constructors*, 158 N.C. App. 480, 483, 581 S.E.2d 138, 141 (2003)).

[1] Initially, we address plaintiffs' argument that the Full Commission's finding of fact number 14 is not supported by competent evidence. We disagree.

The Full Commission's finding of fact number 14 provides that

Trooper Souther adamantly disagreed with plaintiff's accident reconstruction expert, John Flanagan, that Trooper Ledford should have considered swerving left instead. Troopers are trained never to steer left into oncoming traffic, never go left of the double yellow lines, and to never go left when you're going to be meeting a vehicle head on. If Trooper Ledford had swerved left, Mrs. Boring could have stopped in her lane of travel and Trooper Ledford would likely have collided with the rear portion of her car. If Mrs. Boring continued on, Trooper Ledford would have swerved into the grassy median and straight into the oncoming lanes of westbound traffic on U.S. 19/74 where it would have been highly possible that Trooper Ledford would have had a head-on collision with oncoming traffic. As a result, Trooper Souther concluded that swerving right was Trooper Ledford's only option. The undersigned give greater weight to the testimony of Trooper Souther than to Mr. Flanagan.

Plaintiffs contend that their accident reconstruction expert, John F. Flanagan ("Flanagan"), never stated that Trooper Ledford should have swerved into oncoming traffic. Contrary to plaintiff's characterization of the Full Commission's finding, the Full Commission did not find that Flanagan suggested Trooper Ledford should have swerved into oncoming traffic. Instead, the Full Commission found that Flanagan suggested "that Trooper Ledford should have considered swerving left instead." Flanagan testified that if Trooper Ledford had swerved to the left instead of to the right, and if everything else had remained the same, Trooper Ledford would have avoided the collision.

However, Trooper Dan Souther ("Trooper Souther") testified that he "totally disagree[d] with this thinking." He explained that, "[b]eing a trooper and being trained by the [Highway] [P]atrol, I've heard over and over and over again you never steer left into oncoming traffic, never go left of the double yellow lines, never go left where you're going to be in—meeting a vehicle head on . . . ." Trooper Souther further testified that if Trooper Ledford had gone left, and Boring had stopped her forward motion, Trooper Ledford would have "hit her all the same." If Trooper Ledford had gone left, and Boring had continued her forward motion, he might have avoided the collision, but he would not have been able to avoid going onto and across the grass median into traffic on the westbound lanes. Therefore, Trooper Souther stated that "going right was [Trooper Ledford's] only option." Accordingly, we hold the Full Commission's finding of fact number 14 is supported by competent evidence. *See Simmons,* 128 N.C. App. at 405-06, 496 S.E.2d at 793.

[2] Next, we address plaintiffs' argument that the Full Commission erred in making findings of fact numbered 7, 16, and 18 and conclusion of law number 2.

The Full Commission found as follows:

7. As the two vehicles in front of Trooper Ledford cleared the intersection with the landfill entrance where the Lumina was stopped, the Lumina suddenly and without warning pulled out in front of Trooper Ledford. Trooper Ledford immediately made a hard, evasive turn to the right to avoid a collision. As Trooper Ledford's vehicle swerved into the right lane, the Lumina continued forward and a collision occurred in the right lane of U.S. 19/74. The Lumina was being driven by Mrs. Boring who was accompanied by her sister, Mrs. Holloway. As a result of the col-

lision, both Mrs. Boring and Mrs. Holloway were killed and Trooper Ledford was seriously injured.

. . . .

16. The undersigned find as fact based upon the greater weight of the evidence that it was reasonable for Trooper Ledford to assume that the White Lumina driven by Mrs. Boring would not pull out in front of him. Mrs. Boring allowed the two vehicles in front of Trooper Ledford to clear the intersection. It is reasonable that Trooper Ledford believed Ms. Boring had seen everyone, including him[,] and would allow Trooper Ledford through the intersection before pulling out in his path of traffic.

. . . .

18. The undersigned find based upon the greater weight of the evidence that Trooper Ledford's actions while driving in emergency response mode in order to assist Trooper Hyde were justified and did not rise to the level [of] gross negligence.

In relevant part, the Full Commission's conclusion of law number 2 provides that "[b]ased upon the greater weight of the competent evidence[,] Trooper Ledford's actions did not rise to [the] level of gross negligence."

Rather than attempting to show that the Full Commission's findings of fact numbered 7, 16, and 18 are unsupported by competent evidence, plaintiffs attempt to re-litigate the case on appeal by highlighting evidence contrary to the Full Commission's findings. However, we are bound by the Full Commission's findings if they are supported by any competent evidence, even if evidence appears to the contrary. *See* N.C. Gen. Stat. § 143-293 (2007); *Simmons*, 128 N.C. App. at 405, 496 S.E.2d at 793.

In the case *sub judice*, Trooper Ledford testified that he was traveling eastbound on U.S. 19/74 in the left lane. He passed a vehicle that was in the right lane, crested the hill, and came upon two vehicles—one in each lane of travel on eastbound U.S. 19/74. He then took his foot off of the accelerator to decelerate. Approximately 900 feet in front of him, he saw a white Chevrolet Lumina on the westbound side of the highway pull into the median crossover turn lane and come to a complete stop. Trooper Ledford testified that he had the right of way, and he anticipated that the Lumina would remain stopped in the westbound median crossover turn lane until the oncoming, east-

bound traffic had passed. He stated that, "as soon as [the two vehicles] cleared the intersection, Ms. Boring pulled right in front of me, failed to yield, and we collided there in the intersection of U.S. 19[/74]." Trooper Ledford testified that he "hit [his] brakes and took a hard, evasive [turn] to the right" in an effort to avoid the collision. Despite his efforts, he testified that he was unable to avoid the collision because Boring continued moving forward instead of stopping.

The parties stipulated that decedents were traveling together in the Lumina driven by Boring and that decedents died as a result of the collision. Trooper Ledford testified that he missed eighteen months of work from injuries he sustained as a result of the collision. Trooper Ledford's injuries included "some lacerations to the forehead, a broken nose, broken ribs[,] and a hip injury that required surgery."

Trooper Souther created an accident reconstruction report of the collision, and he testified that

> [Trooper Ledford] had the right of way. . . . Even if [Trooper Ledford] had not had his blue light and siren on, which he did, he would still have the right of way. [Boring] has to wait until it's clear—to attempt to make a left turn or even make a U-turn, she has to wait until it's clear to do so.

As explained, *supra*, Trooper Souther further testified that Trooper Ledford's only option was to swerve to the right to avoid the collision because (1) troopers are trained never to swerve left and cross the double yellow line into oncoming traffic; (2) if Trooper Ledford had swerved left, and Boring stopped her forward motion, Trooper Ledford still would have hit the Lumina; and (3) if Boring continued her forward motion, and Trooper Ledford swerved left, he could have crossed the grass median into oncoming, westbound traffic.

Although Captain Randy Campbell ("Captain Campbell"), Trooper Ledford's commanding officer at the time, did not supervise this high-speed pursuit, he testified that he reviewed Trooper Souther's accident reconstruction report, audio and video tapes of the collision, and depositions. Captain Campbell opined that it was appropriate for Trooper Ledford to respond to the call in emergency response mode and that, if he had monitored the chase, he would not have told Trooper Ledford to do anything differently.

Accordingly, we hold that the Full Commission's findings of fact numbered 7, 16, and 18 are supported by competent evidence.

Next, we inquire whether the Full Commission's findings of fact support its conclusion of law number 2. *See Simmons,* 128 N.C. App. at 405-06, 496 S.E.2d at 793. We hold that they do.

North Carolina General Statutes, section 20-145 exempts police officers from speed limitations while chasing or apprehending "violators of the law" so long as police officers operate their vehicles with "due regard for safety." N.C. Gen. Stat. § 20-145 (2007). This exemption, however, does not protect police officers from "the consequence of a reckless disregard for the safety of others." *Id.* With respect to section 20-145, our Supreme Court has explained "that the standard of care intended by the General Assembly involves the reckless disregard of the safety of others, which is gross negligence." *Young v. Woodall,* 343 N.C. 459, 461-62, 471 S.E.2d 357, 359 (1996). "[G]ross negligence has been defined as wanton conduct done with conscious or reckless disregard for the rights and safety of others. Further, an act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Parish v. Hill,* 350 N.C. 231, 239, 513 S.E.2d 547, 551-52 (1999) (internal citations and quotation marks omitted). We previously have noted that "North Carolina's standard of gross negligence, with regard to police pursuits, is very high and is rarely met." *Eckard v. Smith,* 166 N.C. App. 312, 323, 603 S.E.2d 134, 142 (2004), *aff'd,* 360 N.C. 51, 619 S.E.2d 503 (2005) (per curiam).

In the case *sub judice,* in support of its conclusion that Trooper Ledford was not grossly negligent, the Full Commission found that Trooper Ledford responded to a radio alert from the Asheville Communications Division of the Highway Patrol, got into his patrol car, "activated his blue light and siren[,] and proceeded toward the chase in 'emergency response' mode." At some point during the pursuit, Trooper Ledford estimated that he traveled at a speed near 100 miles per hour. Trooper Ledford traveled eastbound on U.S. 19/74, crested a hill, passed a Honda, and decelerated when he came upon two cars ahead of him—one car in each eastbound lane. Furthermore, from a distance of approximately 900 feet, Trooper Ledford saw the Lumina driven by Boring come to a complete stop in the turn lane on the westbound side of a median crossover. No traffic lights or signs alter the flow of traffic on this portion of U.S. 19/74, and Trooper Ledford, along with the other cars on eastbound U.S. 19/74, had the right of way. The two vehicles in front of Trooper Ledford passed the median crossover, and Boring "suddenly and without warning pulled out in front of Trooper Ledford." Trooper Ledford immediately took

evasive action by steering his patrol car hard to the right. Notwithstanding Trooper Ledford's evasive action, his patrol car collided with the Lumina, killed decedents, and injured Trooper Ledford.

However, in an unchallenged finding of fact, the Full Commission found that, "[b]y steering to the right, Trooper Ledford did the right thing . . . ." Also, Trooper Souther opined "that swerving right was Trooper Ledford's only option;" the Full Commission gave greater weight to the testimony of Trooper Souther than to Flanagan. The Full Commission found that "it was reasonable for Trooper Ledford to assume that the White Lumina driven by Mrs. Boring would not pull out in front of him." Thus, the Full Commission concluded that "Trooper Ledford's actions did not rise to [the] level of gross negligence."

We hold that these findings of fact support the Full Commission's conclusion of law number 2. Furthermore, conclusion of law number 2 comports with precedent established by our Supreme Court as well as this Court. *See, e.g., Villepigue v. City of Danville, VA*, 190 N.C. App. 359, 661 S.E.2d 12 (affirming summary judgment of no gross negligence by defendant even though officer traveled in excess of 100 miles per hour four seconds before colliding with decedent along an unfamiliar, two-lane road during a high-speed chase), *disc. rev. denied*, 362 N.C. 688, 671 S.E.2d 532 (2008); *Bray v. N.C. Dep't of Crime Control and Pub. Safety*, 151 N.C. App. 281, 284-85, 564 S.E.2d 910, 912-13 (2002) (holding no gross negligence after state trooper collided with oncoming vehicle during pursuit after losing control due to excessive speed); *Fowler v. N.C. Dept. of Crime Control & Public Safety*, 92 N.C. App. 733, 736, 376 S.E.2d 11, 13 (holding no gross negligence when officer caused a collision after the officer traveled at approximately 115 miles per hour, without lights or siren, through a sparsely populated area, and tried to overtake a suspect after an eight-mile chase), *disc. rev. denied*, 324 N.C. 577, 381 S.E.2d 773 (1989). *Cf. Jones v. City of Durham*, 168 N.C. App. 433, 608 S.E.2d 387 (2005)[2] (holding a genuine issue of material fact existed as

---

2. The appellate history of *Jones* began in this Court. *Jones*, 168 N.C. App. 433, 608 S.E.2d 387. The plaintiff subsequently appealed to the Supreme Court pursuant to Levinson, J.'s dissent. *Jones v. City of Durham*, 360 N.C. 81, 622 S.E.2d 596 (2005). Our Supreme Court originally affirmed the majority opinion of this Court. *See id.* The Supreme Court then granted plaintiff's petition for rehearing, *Jones v. City of Durham*, 360 N.C. 367, 629 S.E.2d 611 (2006), and reversed its prior affirmation for the reasons stated in Levinson, J.'s dissent. *See Jones v. City of Durham*, 361 N.C. 144, 146, 638 S.E.2d 202, 203 (2006) (per curiam). For clarity, we adopt the citation of the original appeal and the reasoning of Levinson, J.'s dissent, upon which our Supreme Court later relied. *Id.*

to plaintiff's gross negligence claim when the officer responded to another officer's call for assistance—rather than a police pursuit—and drove at an excessive speed through a residential neighborhood without activating his blue lights or siren, all of which the officer knew created a high probability of an accident).

Trooper Ledford's actions did not rise to the level of gross negligence—"wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Parish*, 350 N.C. at 239, 513 S.E.2d at 551 (citation and quotation marks omitted). In response to the alert from the Highway Patrol, Trooper Ledford immediately proceeded toward the chase eastbound on U.S. 19/74 in emergency response mode with the right-of-way along a familiar four-lane highway with his blue lights and siren activated in light traffic on a clear afternoon. The Full Commission found that Boring was at a complete stop and that it was reasonable for Trooper Ledford to assume that the Lumina would wait for the vehicles with the right-of-way to pass the median crossover before turning across eastbound U.S. 19/74. Trooper Ledford's immediate evasive action was the only option available to him under the circumstances. Accordingly, we hold that the Full Commission did not err in concluding that "Trooper Ledford's actions did not rise to [the] level of gross negligence."

For the foregoing reasons, we affirm the Full Commission's decision and order denying plaintiffs' negligence claim against defendant.

Affirmed.

Judges ELMORE and STEPHENS concur.